# M. R. BASKERVILLE v. WILLIAM BATES and Another.[1]

November 7, 1913.

Nos. 18,412—(83).

**Contract construed — agency.**

> One of the defendants entered into a contract with the predecessor in title of the plaintiff which contemplated the sale and peddling of proprietary medicines in one of the counties of the state, and his codefendant. guaranteed its performance. The action is for goods sold and delivered. Construing the contract it is *held* not to be a contract of absolute sale, making the principal defendant, upon the termination of the contract, liable for the stipulated sale-prices of the merchandise delivered to him, and still unsold, but in the nature of an agency contract, where the liability, if any, is dependent upon other principles, and that the defendants. are not liable in this action.

Action in the district court for Cottonwood county by the assignee of a contract to recover $1,945.80, the price of goods, wares and merchandise sold to defendant Bates. The action was tried before Nelson, J., who denied plaintiff's motion for a directed verdict, and a jury which returned a verdict in favor of defendants. Plaintiff's motion for judgment notwithstanding the verdict or a new trial was denied. From the judgment entered pursuant to the verdict, plaintiff appealed. Affirmed.

*Loucks, Mather & Stover* and *O. J. Finstad,* for appellant.
*Wilson Borst,* for respondent.

DIBELL, C.

This is an action for goods sold and delivered, brought to recover for certain proprietary medicines designed for household and veterinary use alleged to have been sold by the Blue Bell Medicine Company, of South Dakota, to the defendant Bates. The defendant Eastgate guaranteed the contract. The plaintiff is the owner by purchase from the receiver of the medicine company. The plaintiff ap-

[1] Reported in 143 N. W. 909.

peals from a judgment in favor of the defendants after a trial to a jury.

The vital question is whether the contract, which is in writing and complete in itself, is a contract of absolute sale making Bates liable, upon the termination of the contract, for the stipulated price of the goods which he ordered.

The contract recited a desire on the part of Bates to purchase of the Blue Bell Medicine Company, on credit and at wholesale prices, for the purpose of selling again to consumers, certain medicines and other goods manufactured or distributed by the medicine company, paying his account in instalments as provided in the contract. Bates was to sell no other goods than those sold by the company, was to sell at retail prices fixed by the company, and was to pay on the basis of the wholesale prices fixed by the company. He was to remit to the company in cash each week an amount equal to one-half of the receipts of his business, of which he was to submit weekly reports. Upon the termination of the contract he was to settle in cash within a reasonable time the balance due the company on account. The company agreed to fill and deliver his reasonable orders, provided his account was in a satisfactory condition, and to charge current wholesale prices, and to notify him promptly of any change in wholesale or retail prices. It agreed to pay any license fee required by the state or county. It agreed to furnish advertising matter, reports and other blanks. It agreed to give, free of charge, instructions and advice by letter, bulletins and otherwise, as to the best methods of selling products to consumers. Bates and his guarantor were to be released from the contract at any time by paying in cash the balance due the company on account. The contract was to continue so long only as his account and amount of purchases were satisfactory to the company.

Concurrently with this contract it was agreed, by another contract in writing, that so long as Bates worked continuously selling Blue Bell medicines the company would not sell to anyone else to peddle in Cottonwood county, but if the contract was terminated the company might sell as if the agreement had not been made. The so-called

guarantee was a guarantee of "the honest and faithful performance of the said contract."

We construe the contract to be in the nature of an agency contract as distinguished from an absolute sale contract making Bates liable for the wholesale price of merchandise unsold when the company terminated the contract.

It is true that the contract does not expressly provide for a return of the merchandise unsold. It is equally true that it provides no method of paying for merchandise except by remitting each week an amount equal to one-half of the receipts from the business. The money to be paid the medicine company was not upon a sale by that company to Bates, but either upon a sale by Bates to the ultimate consumer or upon payment by him. In effect Bates was to account to the company for the goods sold by him at prices fixed by the company, and they might be fixed from time to time. It was contemplated, though this does not appear on the face of the contract, that Bates would leave medicines with the farmers, without an actual sale, as he peddled through the country. They might be kept or returned. There was no limit of time to the contract. The right to terminate it was substantially absolute. When terminated Bates was to settle in cash the balance due the company on account, and the only method provided for paying the company was by paying a sum equal to one-half of the receipts of the business. No other sum was due on account.

We have found no case construing a contract precisely like this one. The following cases are illustrative of some features of it: D. M. Osborne & Co. v. Josselyn, 92 Minn. 266, 99 N. W. 890; Walker v. Butterick, 105 Mass. 237; Metropolitan Nat. Bk. v. Benedict Co. 74 Fed. 182, 20 C. C. A. 377; In re Columbus Buggy Co. 143 Fed. 859, 74 C. C. A. 611; Velie Motor Car Co. v. Kopmeier Motor Car Co. 194 Fed. 324, 114 C. C. A. 284.

The action being for goods sold and delivered our construction of the contract ends the case.

Judgment affirmed.