# SINCLAIR COAL COMPANY v. PITTSBURGH & ASHLAND COAL & DOCK COMPANY.[1]

June 28, 1929.

No. 27,451.

*Kingman, Cross, Morley & Cant* and *Edwin D. Ford, Jr.* for appellant.

*Boyeson, Otis, Brill & Faricy,* for respondent.

WILSON, C. J.

Plaintiff is a wholesale coal merchant at Kansas City. Defendant is a coal jobber in Minneapolis. Plaintiff sued to recover $2,720.48, balance on an account, which defendant conceded, but alleged a counterclaim of $4,533.34. The court sustained the coun-

[1]Reported in 226 N. W. 206.

terclaim, and the difference, interest and expenses went into the judgment.

Plaintiff furnished coal to defendant and claims the transaction was a sale. Defendant claims to have been plaintiff's agent handling the coal on commission. Some of the coal shipped was subjected to demurrage which defendant paid in the aggregate sum of $4,533.34. If plaintiff sold the coal to the defendant the demurrage should be paid by the latter, but if the relation was that of principal and agent it was the obligation of the former.

The contractual relation depends upon the construction of certain letters between the parties. Plaintiff wrote a letter to defendant following a verbal discussion of a plan for mutual benefit, in which it was stated:

"* * * you are to represent us in the northwest territory. * * * It is my understanding of the arrangement that you are to represent us in that territory exclusively, and place our coal with the dealers who will maintain a $15.75 retail price on same until further notice, your price to the dealers at the present time being $7.00 for Grate and Egg mixed and $7.00 on No. 4 and Chestnut mixed with a commission of 50¢ per ton to you."

If prices are to be changed "we will agree to give you at least ninety days' notice, and also protect you on any tonnage which you have sold previous to the notification to you of such change."

Three days later plaintiff wrote defendant quoting step-up prices on three grades of coal for July, August and September and added:

"These are prices at which the coal is to be sold to the retail dealer, you to have a commission of 50¢ per ton * * *. It is understood that * * * your commission of 50¢ per ton will not be reduced in any cases whatever. * * * In soliciting orders on this particular coal * * * the matter of commission will have to be arranged * * * if order is booked, * * *. For the present, we will have to confine our sales for July and August shipment. * * *

"Now that you have the price and conditions as to the sale of this coal, * * * suggest that you send us all orders as rapidly

as you book them, showing full information as to tonnage, price, etc. on each order. If you have no objections, would like to have simply a copy of the orders which you book, with the different dealers, showing to whom the sale is made, price, etc. This will allow us to keep closely in touch with the situation there and advise the mine from time to time, about how much business we are booking for shipment during any one month."

Defendant replied agreeing to the terms and conditions stated by plaintiff and expressed a desire that the arrangement be a permanent one "providing further, that we performed satisfactorily under this arrangement."

The coal involved in the demurrage was shipped under an order made by defendant containing these words:

"Price per ton F. O. B. Cars, Mines $6.50  *  *  *  Subject to our shipping instructions and to our ability to sell and order out."

This order was for 30,000 tons. A letter accompanied it saying:

"Inclose herewith order for 30,000 tons, more or less, Arkansas Anthracite, to be shipped during the year  *  *  *. This, of course, is approximate only, subject to our ability to handle and to our sending you definite shipping instructions from time to time."

■ The contract rests upon the construction of the correspondence, which shows that: Defendant is given the exclusive right to represent plaintiff in certain territory. It may sell coal only to customers to retail at a fixed price, which can be changed only by plaintiff. Defendant is to receive a commission of 50 cents per ton. If prices are changed commission is not to be changed. If a particular coal, which plaintiff would have to buy, is to be sold the "commission will have to be arranged." The relation may be terminated on 90 days' notice. Period of duration is indefinite. There is no suggestion that defendant is to pay for the coal; nothing to indicate that it is to be liable therefor. Time of payment is not mentioned. The clauses and terms usually found in a sale contract are absent. If defendant bought the coal it could ordinarily, but not always, sell it as it might choose, without restriction as to

price or party. If a sale, there was little occasion to agree to protect defendant "on any tonnage which you have sold previous to the notification to you of such change." The words "commission of 50¢ per ton to you * * * you to have a commission of 50¢ per ton * * * your commission of 50¢ per ton will not be reduced in any cases whatever" have a very definite, ordinary meaning.

The use of a particular word or words indicating the relation of the parties cannot control against the intention disclosed by the entire writing. But here the word "commission" is repeatedly used. This word, which has no technical meaning, is usually employed to mean the compensation to an agent, broker or person who handles the affairs of others in payment for their services. Here the entire writing is consistent therewith. There is really nothing in the written understanding to the contrary. The relation of debtor and creditor is not established. This is important. Such evidence as tends to discredit the relation of principal and agent rests upon subsequent conduct of the parties which tends but is insufficient to overcome the written contract by a practical construction. The contract being unambiguous speaks for itself, and it was not subject to explanation by parol evidence. See Sutton v. Baker, 91 Minn. 12, 97 N. W. 420; Martin v. Fee, 177 Minn. 592, 226 N. W. 203. We construe it, as the trial court did, as creating the relation of principal and agent.

The order standing alone would indicate a sale, but the arrangement under which the order was sent in is evidenced by the letters. The language of the order and in the letter accompanying it indicated that the order was "subject to our ability to handle" or "order out." The conduct of the parties in reference to the entire matter shows that coal shipped under this order was in fact handled pursuant to the prior arrangement. The order does not constitute the contract but must be considered as made in the performance of the existing arrangement.

■ The demurrage accrued under unusual circumstances. The question of defendant's negligence in reference thereto is a close

one.   The evidence however is sufficient to sustain the finding that defendant was not negligent.

The demurrage expense, not being the result of defendant's negligence but having accrued as an incident to defendant's faithful performance of the agency contract, is an expense belonging to the plaintiff.   Veltum v. Koehler, 85 Minn. 125, 88 N. W. 432.

Affirmed.

HILTON, J. took no part.