WALFRED NELSON AND ANOTHER v. THEODORE T.
ANDERSON AND ANOTHER, *d.b.a.* ANDERSON
BROTHERS PLUMBING & HEATING
COMPANY, AND ANOTHER.
NORTHWESTERN INSURANCE COMPANY AND
ANOTHER v. SAME.[1]

November 4, 1955.

Nos. 36,590, 36,591.

[1]Reported in 72 N. W. (2d) 861.

*Meagher, Geer, Markham & Anderson, David W. Nord,* and *O. C. Adamson II,* for appellants.

*Robins, Davis & Lyons* and *Kenneth E. Tilsen,* for respondents.

KNUTSON, JUSTICE.

Appeals from an order denying defendants' motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Plaintiff Walfred Nelson is a builder by trade. In the fall of 1947 he began construction of an apartment building in the city of St. Paul. He let the contract for plumbing and heating to defendants Theodore T. Anderson and Arthur A. Anderson, doing business as Anderson Brothers Plumbing & Heating Company. This contract called for installation of an Enterprise oil burner among other things. Defendant Grudem Brothers Company, Inc., was the exclusive distributor of Enterprise oil burners in this territory. Anderson Brothers sublet the work of furnishing and installing the oil burner to Grudem Brothers. The installation was completed and the oil burner turned on sometime in September 1948.

The oil burner covered by this contract is one designed for use in commercial buildings. It is so designed that it may burn a heavy No. 5 or No. 6 oil, which must be preheated before it reaches the burner proper. It is conceded that it requires much more care than the ordinary burner used in family dwellings.

The evidence shows that there was considerable difficulty with the burner after it was first turned on. Between September 1948 and December 1 of the same year, 15 service calls were made by Grudem Brothers to start the burner and to make various adjustments on it.

On November 30, 1948, Nelson, who was still working on the building, left at the end of the day with the oil burner working properly. When he returned the next morning he found the boilerroom full of smoke and soot. The boiler door was open and the burner was out. The smoke and soot had reached the upper floors of the building. He called his insurance agent, William H. Hite, who testified that they found oily dirt on the walls, ceilings, woodwork, and carpeting of the upper floors of the apartment building. No one testified as to what was done to put the burner back in operation, nor is there any evidence by any witness present on this occasion as to what caused the damage. The insurer made a settlement of the loss, and the building thereafter was renovated.

Nelson continued to use the burner, although the evidence shows that they continued to have trouble with it.

Early on the morning of January 2, 1952, Nelson had a call from one of his tenants informing him that the hall was full of smoke. He went to the apartment building and found the fire out and the boilerroom, laundry room, and halls full of smoke. He called the Kimball Company, who service oil burners. They sent out one Ward Ernest Holliday to the building. He testified that he found that wires adjacent to the burner were burned and that the bakelite terminal block within an enclosure to which these wires were fastened was also burned. He put in temporary wiring so that the burner could be started.

Richard Weatherston, an engineer familiar with this type of burner, was then called. He found the temporary wiring Holliday

had installed, and he also found that the motor for the recirculating pump which keeps the oil moving was inoperative. There was no voltage present at the terminals to the electric preheater although the heater itself was all right. Weatherston fixed the pump on the burner and then installed a new line which he called a "bypass." He testified that the purpose of this line was to have less oil dormant in the system when it was not running so that less oil would cool off and become too viscous. This would tend to make the oil vaporize more readily when introduced into the oil cup.

In order to understand the testimony of Weatherston it is necessary to have in mind the manner in which this oil burner functions. In view of the heavy type of oil used it is necessary to preheat the oil. There are two preheaters on the system, one of which consists of coils attached to the boiler through which hot water passes. When the burner is not operating, the oil continues on from this preheater to the tank and continues to recirculate constantly, whether the burner is on or off. When the burner starts, the burner pump draws oil from the circulating line into another electric preheater, which further preheats the oil. The oil then passes through a valve into the burner nozzle and from that point drops onto a circulating cone which is spinning at the rate of 3,500 revolutions per minute. Centrifugal force causes the oil to vaporize and thereby burn.

The only evidence in this case as to the cause of these two explosions is the expert testimony of Weatherston. Based on a hypothetical question, he testified that the 1948 incident happened because the Mercoid Visaflame operated erratically and because the oil delivered to the burner was cold. He said that the cause of the incident of January 1952 was the oil piping plus the inoperation of the electric preheater.

Part of the equipment called for by the contract with Grudem Brothers and Anderson Brothers and installed as part of the oil burner is a Mercoid Visaflame. This equipment is simply an electric eye so mounted that the light from the fire will shine on it when the burner is on. It is energized when the burner machinery starts to run, and, if the oil does not ignite so that it does not "see" any flame,

it shuts down the machine. If it gets dirty from soot or otherwise, it may shut off the motor even if there is a fire. The Mercoid Visaflame was taken out by Grudem Brothers in 1949 and a stack switch used instead. A stack switch is intended to accomplish the same purpose but is actuated by heat rather than light.

These actions were brought by the insurers who paid the damages resulting from these two incidents and by Nelson to recover consequential damages, including loss of rent during the time that the building became untenantable. The jury returned verdicts in favor of plaintiffs against both defendants, and these appeals have been taken from an order denying defendants' blended motion for judgment notwithstanding the verdict or a new trial.

It is somewhat difficult to tell on what theory the court submitted the case to the jury. Prior to the court's instructions, the court and counsel had some discussion about the issues to be submitted, after which the court said:

"It is stipulated between all of the parties to this matter that the Court may submit two forms of verdicts in each of these cases, one form of verdict in favor of the defendants, both defendants in each of the cases, one form of verdict in favor of the plaintiff and against both defendants in both of these cases. This is agreed to notwithstanding the statement of the Court that it is going to submit to the jury two issues, one, was there negligence on the part of the defendant Grudem Brothers Company in the method in which it installed this burner, and, secondly, was there a breach of an implied agreement on the part of Anderson Brothers to install the burner in a good and workmanlike manner."

The parties agreed that, if Anderson Brothers were liable, the court could enter judgment over against Grudem Brothers to indemnify Anderson Brothers. In its instructions the court said:

"* * * The first issue I would suggest that you take up is: Did the Grudem Company fail to install the oil burner in a good and workmanlike manner? * * * if you find that the Grudem Company breached the agreement by not installing the oil burner in a good and workmanlike manner, then you come to some further issues.

I would suggest that the next issue you take up is; did the breach of contract, if any, cause or contribute to causing the explosion or blow-back of December 1, 1948? * * * I would suggest that you next take up the question: Did the breach of contract or agreement, if any, cause or contribute to causing the explosion or blow-back of January 2, 1952?"

The court said nothing about the law of negligence and refused to submit the issue of the contributory negligence of plaintiff Nelson.

Grudem Brothers Company now contends that it was error to submit the case on the theory of a breach of implied warranty as to it for the reason that there was no privity of contract between Grudem Brothers and Nelson. This position might be tenable were it not for the stipulation of the parties. However, if the instructions were correct as to Anderson Brothers, it is difficult to see how Grudem Brothers Company has been prejudiced in view of its stipulation that, if the jury found against Anderson Brothers, the court could enter judgment over against it.

The more serious question is whether it was error to refuse to submit the issue of contributory negligence to the jury even if it was proper to submit the case to the jury on the theory of a breach of implied warranty.

Historically, breach of implied warranty in the sale of goods was a tort. The action was a tort action.[2]

While there are cases to the contrary, we believe that the weight of authority and sound reason support the view that, in an action based on a breach of implied warranty, contributory negligence of the buyer is a good defense insofar as a right to recover consequential damages is concerned.[3]

[2]Prosser, *The Implied Warranty of Merchantable Quality*, 27 Minn. L. Rev. 117, 118; Prosser, Law of Torts (2 ed.) § 83, p. 493.

[3]55 C. J., Sales, § 855, p. 869; 77 C. J. S., Sales, § 374, p. 1320; 46 Am. Jur., Sales, § 807; Marsh v. Webber, 16 Minn. 375 (418); Fredendall v. Abraham & Straus, Inc. 279 N. Y. 146, 18 N. E. (2d) 11; Bruce v. Fiss, Doerr & Carroll Horse Co. 47 App. Div. 273, 62 N. Y. S. 96; Merrimac Chemical Co. v. American Tool & Machine Co. 192 Mass. 206, 78 N. E. 419; Heath v. Channel Lbr. Co. 25 N. J. Super. 6, 95 A. (2d) 425; Dalrymple v.

In Razey v. J. B. Colt Co. 106 App. Div. 103, 106, 94 N. Y. S. 59, 61, the supreme court of New York, appellate division, said:

"* * * Where the plaintiff seeks to recover damages for a breach of a general warranty, which are usually the difference between the value of the thing as it is in fact and as it was warranted to be, the question of negligence does not enter, but where he seeks to recover consequential damages he should not be permitted to recover for his own negligence. It has frequently been said that such damages are recoverable as may reasonably be said to have been within the contemplation of the parties. Warranty is not insurance, and there is nothing in this contract to indicate that either party supposed the defendant was to answer for the plaintiff's carelessness. If it is impossible to separate the consequences of the plaintiff's negligence from the consequences of the defendant's breach of warranty, then the plaintiff must be limited to general damages, for otherwise he is permitted to recover for his own fault. We can discover no reason why he should be permitted to recover any damages which his own negligence has contributed to produce, and no authority has been cited by the respondent in support of such a proposition."

In Ellen v. Heacock, 247 App. Div. 476, 480, 286 N. Y. S. 740, 745, the New York court, following the above case, said:

"* * * The defendant cannot be held liable for any consequential damages if a third party was responsible therefor. Nor can the plaintiff recover damages due wholly or in part to his own carelessness or neglect, or that of his agents or servants."

■ Nor is the seller liable for consequential damages if the buyer continues to use the equipment after he knows that it is not functioning properly. In 46 Am. Jur., Sales, § 807, the rule is stated thus:

"* * * a buyer who uses the article after he discovers the danger will be held to have assumed all the risk of damage to himself, not-

Sinkoe, 230 N. C. 453, 53 S. E. (2d) 437; Ringstad v. I. Magnin & Co. 39 Wash. (2d) 923, 239 P. (2d) 848. For cases contra, see Challis v. Hartloff, 136 Kan. 823, 18 P. (2d) 199; Bahlman v. Hudson Motor Car Co. 290 Mich. 683, 288 N. W. 309.

withstanding the seller's assurance of safety. As in other cases in which the question of contributory negligence is involved, it is generally for the jury to determine whether, under the circumstances, the buyer was contributorily negligent in relying upon the seller's assurance."

In 77 C. J. S., Sales, § 374, p. 1320, the rule is stated as follows:

"* * * no recovery can be had of special damages caused or contributed to by the buyer persisting in the use of the goods after the breach is discovered, or, with ordinary care and attention, might have been discovered."[4]

The court instructed the jury as follows:

"* * * It is the law that if these incidents were caused solely by any acts of Nelson in failing to properly maintain the heating plant, then none of the plaintiffs are entitled to get any damages, but if said incidents occurred and occurred because of said breach of agreement by Grudem Company, then the defendants are responsible for all of the consequences even though some failure on the part of Nelson properly to maintain the heating plant also may have contributed to causing the incidents."

Of course, the instruction that plaintiffs could not recover if the incidents were caused solely by the acts of Nelson is technically correct, but that instruction neither adds nor detracts from the instruction as a whole. It follows without argument that, if the so-called explosions were caused solely by acts of Nelson, they could not be caused by any acts of defendants, in which case there could be no recovery. The balance of the statement incorrectly states the rule with respect to contributory negligence. We believe that the correct rule which should be applied is the one stated in Razey v. J. B. Colt Co. *supra.*

[4] W. H. Bintz Co. v. Mueggler, 65 Idaho 760, 154 P. (2d) 513; Topeka Mill & Elev. Co. v. Triplett, 168 Kan. 428, 213 P. (2d) 964; Finks v. Viking Refrigerators, Inc. 235 Mo. App. 679, 147 S. W. (2d) 124; Vezina v. Souliere, 103 Vt. 190, 152 A. 798; Cedar Rapids & Iowa City Ry. & L. Co. v. Sprague Elec. Co. 203 Ill. App. 424; Uhlig v. Barnum, 43 Neb. 584, 61 N. W. 749.

■ The only evidence in this case upon which a verdict can be based is that given by Richard Weatherston. It was his opinion that the first explosion was caused by the lack of the pipe he installed, coupled with the failure of the Mercoid Visaflame to function properly. It has not been explained how failure of the Visaflame, whose only function is to shut off the burner in case there is no fire, could cause an explosion. Unless the Visaflame was improperly installed, however, defendants hardly could be liable for its failure since it is one of the items selected and specified by Nelson in his contract with Anderson Brothers. Much the same is true of the second explosion. Weatherston there said that the explosion was due to the absence of the pipe he had installed, coupled with the failure of the electric preheater, each contributing about the same to causing the explosion. There is no claim that defendants are responsible for the functioning of the preheater. It must follow that, if the explosion would not have occurred had it not been for the failure of the preheater, defendants cannot be held liable. Under the evidence in this case they were entitled to an instruction that plaintiffs cannot recover unless the jury finds that the explosions were due to the failure of Grudem Brothers to install the pipe which was installed by Weatherston and then only if such installation was part of the ordinary and good workmanlike installation required of them under their contract.

Other errors assigned need not be answered, since they are not likely to arise again on a new trial. For the errors discussed there must be a new trial.

Reversed.