# LOUIS DeGIDIO OIL AND GAS BURNER SALES AND SERVICE, INC. v. ACE ENGINEERING COMPANY, INC.

225 N. W. 2d 217.

November 1, 1974—Nos. 44131, 44270.

*Curtin, Emerick & Mahoney, Richard Emerick,* and *Michael C. Mahoney,* for appellant.

*Shanedling, Phillips, Gross & Aaron* and *Felix M. Phillips,* for respondent.

Heard before Otis, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an action by a heating contractor against a furnace manufacturer to recover damages for breach of warranty and consequential damages. The jury awarded plaintiff $29,600 and defendant appeals from the judgment and from an order denying judgment n. o. v. or a remittitur or a new trial. We grant a remittitur of $1,750 and otherwise affirm.

There are two issues: First, whether plaintiff and defendant stood in the relationship of buyer and seller or that of principal and agent; and, second, whether the evidence supports the amount of damages awarded.

20

The parties entered an agreement on August 19, 1964, to which was attached an addendum, the contents of which agreements are as follows:

"REPRESENTATIVE AGREEMENT

"This Agreement between the Ace Engineering Company, 2850 W. Harrison St., an Illinois corporation, hereinafter called the Manufacturer, and

Louis DeGidio Oil & Gas Burner Sales & Service Inc.
3106 Findley Place
Minneapolis, Minn. 55408

hereinafter called the Representative shall be as follows:

"A. *Territory:* The Representative is hereby granted the exclusive right to sell within the following area, but not outside such territory, the products as hereinafter described under Item B.

entire state of Minnesota
Counties of LaCrosse, Monroe, Jackson, Clark, Taylor, Price, Iron and all counties west of above in State of Wisconsin

"B. *Products:* Bearing Manufacturer's Label, Ace Rotary Burners and accessories. 'G' Series Burners and accessories, Auburn Burners and accessories.

"C. *Quotations & Orders:* All orders are subject to the acceptance of the Manufacturer. All credits, billings and collections are to be handled by the manufacturer. Representative agrees to co-operate in obtaining credit information and to confirm all quotations to the Manufacturer.

"D. *Commission:* Commissions are to be based on the difference between the Representative's selling price and Representative's cost, FOB plant, Chicago, Ill. Price lists may be issued from time to time and are subject to changes and/or corrections. Commissions will be paid by the Manufacturer to the Representative, within the first 10 days of the month following that which payment has been received.

"E. *Termination:* This agreement may be cancelled at any time by either party giving thirty (30) days notice in writing to the other party, or by either party without advance notice for

violation by the other party of any conditions specified herein.

"F. *General:*

"A. Representative agrees not to handle items which are competitive, either directly or indirectly with the products covered by this agreement.

"B. The Representative is an Independent Contractor and is to service and solicit at his own expense. The Representative agrees to hold harmless the manufacturer against any and all claims by the Representative and others.

"C. This agreement is not to be altered or modified except in writing, signed by both the Manufacturer and the Representative. This agreement shall not be assigned without the written consent of the Manufacturer.

"Signed and dated at Chicago, Illinois this 19th day of August, 1964.

"WITNESS:

/s/ Bernard Morton

<div style="margin-left:2em">

/s/ Ace Engineering Co.

MANUFACTURER

By /s/ D. B. Barrett Title

Sales Manager

/s/ Louis DeGidio

REPRESENTATIVE

By /s/ Louis DeGidio Title ——

</div>

\* \* \* \* \*

"Ace Engineering Co.

2850 W. Harrison St.

Chicago, Ill.

Attn.: Mr. M. D. Vicchiarelli

Subject: Representative agreement

"Gentlemen:

"Enclosed are the two copies of the agreement, and we have bracketed two items that need clarification.

"Paragraph 'C' simply does not lend itself to our operation

because in almost every case we sell a lot of installation work with the burner. The burner cost may be as an example $2,500.00 where our contract with the customer including oil storage tank, oil piping, wiring, startup and service, liability insurance, etc. will bring the total cost up to $8,000.00. We question the wisdom of your getting involved in that portion of our work. We buy and resell with all of our accounts and that seems to work the best for all parties concerned.

"Sub-paragraph 'A' of paragraph 'F' is inconsistent because as you know we must continue to buy Wisconsin burners because yours don't have sufficient capacity for many of our applications. We must continue to offer Todd burners in styles that you don't as yet offer, namely air atomizing and natural draft rotary gas-oil combination units.

"We think that it would be well to attach an addendum to the contract clarifying the above two paragraphs.

"Yours very truly,
DeGidio Inc.
signed by B. W. Morton

"P.S. 'We need at least six manuals for distribution to Engineers.'

\*  \*  \*  \*  \*

"ADDENDUM TO REPRESENTATIVE AGREEMENT BETWEEN
ACE ENGINEERING COMPANY AND LOUIS DEGIDEO
OIL & GAS BURNER SALES & SERVICE INC.

3106 Findley Place
Minneapolis, Minn. 55408

"Amend Paragraph 'C' Quotation and Orders to read as follows:

"All orders are subject to the acceptance of the Manufacturer. All credits, billing and collections are to be handled by the Representative. Manufacturer will bill the Representative for payment of Equipment services shipped within 30 days.

"Amend Sub-Paragraph 'A' of Paragraph 'F' to read as follows:

"It is understood that the Representative is not to sell any similar products of competitive manufacture without the written approval of the Ace Engineering Co.

"Signed and dated at Chicago, Illinois this 19 day of August, 1964, by D. B. Barrett, Sales Manager for Ace Engineering Co. and Louis DeGidio for himself."

Pursuant to their contract, DeGidio from time to time placed orders with Ace for 11 heating units to be installed in four schools and one nursing home. The jury found that Ace made the following warranties and that all of them were breached:

(a)  That the heating units would burn the amount of fuel stated on the purchase order and the acceptance;

(b)  That they would burn the amount of fuel stated in the catalog;

(c)  That they would conform to the performance of the Re Track burner;

(d)  That they would give long, trouble-free operation;

(e)  That they would be fully modulating; and

(f)  That the AX 40 was tested satisfactorily on gas and oil at the Reliance Boiler Factory.

The trial court adopted the findings of the jury, holding as follows:

"The aforesaid statements and affirmations set out in Defendant's catalog, the representation that the burners would burn the amount of fuel stated on the purchase orders and acceptances, the representation that the design and performance of the Retrack Company burner would be the same as subsequent AX burners and the report that the AX 40 was tested satisfactorily on gas and oil at the Reliance Boiler Factory, Milwaukee, Wisconsin, all constituted express warranties from Defendant to Plaintiff which Plaintiff received and relied upon in connection with the purchase of 11 AX burners in 1967 and 1968.

"None of said AX burners conformed to all of said warranties

by Defendant and each warranty was breached as to each of said 11 burners."

1. Appellant argues that DeGidio was not a purchaser but was an agent or held a franchise and consequently was not entitled to invoke the warranty provisions of the Uniform Commercial Code. Minn. St. 336.2—719. Defendant points out that the "representative agreement" confers on plaintiff an exclusive right to sell within a specified territory; refers to "commissions"; and prohibits DeGidio from handling other items. In addition, the purchase orders were signed by DeGidio as "purchasing agent." DeGidio's function, it is argued, was to secure sales for Ace at a specified price and to realize its profit from the ultimate purchaser by charging him for installation, wiring, and startup costs.

DeGidio, on the other hand, refers to the invoices rendered by Ace showing the equipment "sold to" DeGidio. In its letter to Ace above, DeGidio insisted upon the following revision:

"We buy and resell with all of our accounts and that seems to work the best for all parties concerned,"

in response to which the addendum provided:

"* * * All credits, billing and collections are to be handled by the Representative. Manufacturer will bill the Representative for payment of Equipment services shipped within 30 days."

It further appears that Ace had no dealings with the institutions where its burners were installed but billed DeGidio and was paid directly by it at a fixed price. It does not appear that in DeGidio's dealings with its customers it was limited to charging the amount it paid Ace. No commissions as such were ever paid by Ace. The original agreement of 1964 did not include any reference to the AX burners which are the subject of this litigation since they were not manufactured at that time.

The jury found that DeGidio and Ace stood in the relationship

of buyer and seller, and the trial court adopted that finding, saying,

"* * * [T]he course of conduct of the parties over the years was fully consistent with the relationship of buyer and seller. DeGidio ordered the burners from Ace, paid Ace for them and sold them to others.

"The jury was fully justified in answering the question relative to this issue as it did. Indeed it seems doubtful if a contrary answer could have been sustained."

In support of its position, Ace cites St. Paul Harvester Co. v. Nicolin, 36 Minn. 232, 30 N. W. 763 (1886); D. M. Osborne & Co. v. Josselyn, 92 Minn. 266, 99 N. W. 890 (1904); Baskerville v. Bates, 123 Minn. 339, 143 N. W. 909 (1913); Sinclair Coal Co. v. Pittsburgh & Ashland C. & D. Co. 178 Minn. 114, 226 N. W. 206 (1929). All of these cases may be distinguished. In the St. Paul Harvester case, the contract expressly created a fiduciary relationship, and there was no promise on the part of the defendant to pay the plaintiff for the equipment consigned to it. Indeed, the decision states that the plaintiff appointed the defendants its "agents" for the sale of farm machinery.

In the Osborne case, where we found a relationship of principal and agent, we stressed the fact that if the dealers acquired absolute ownership and title and were not merely acting as representatives in selling farm equipment, "the plaintiff had no right to restrict them as to where, or to whom, or for what price, they might sell it." 92 Minn. 270, 99 N. W. 891. By way of contrast, in the instant case DeGidio was free to make any agreement with ultimate purchasers which it saw fit without the restrictions to which the court alluded in Osborne.

In Baskerville, where an agency was found, it is significant that the price of the sale was fixed by the principal and was payable only after the sale had been consummated to the ultimate purchaser.

Finally, in the Sinclair Coal case, our court in finding an

agency pointed out that the coal in question could only be sold at a fixed price established by the principal for which the agent was to receive a fixed commission and that there was no suggestion in the agreement of the parties that the agent was to pay for the coal or be liable for it.

As we said in Victor Talking Machine Co. v. Lucker, 128 Minn. 171, 174, 150 N. W. 790, 791 (1915), some of the provisions of the agreement may have been consistent with the contract of agency, but "taking all of the transactions together, we think the relation of the parties was clearly that of vendor and vendee, and not of principal and agent." In reaching this conclusion, we are of the opinion that DeGidio's correspondence and addendum with Ace expressed a clear intent to transact business as a buyer and seller. Ace looked to DeGidio for the purchase price of its equipment and had no dealings whatever with the ultimate purchasers. DeGidio, as we have indicated, made its profit by having the burners attached to boilers, wiring the equipment properly, and installing it for use. The jury and the trial court found that it was the intention of the parties to create a vendor-vendee relationship, and we hold that the evidence sustains that finding.

2. The issue of damages is more difficult. Ace does not contest the findings of the court and jury that the burners it furnished DeGidio were defective in the particulars set forth in the special verdicts. It does, however, vigorously dispute the finding that the burners it furnished had no value and that DeGidio was entitled to recover all of its installation expenses as incidental damages. Essentially, it is the position of Ace that at the time of trial all but one burner were still in operation and consequently must have had some value, and that in any event DeGidio has been fully compensated by its ultimate purchasers, both for the cost of the burners and the cost of installation.

The problem which troubled the trial court and which we find equally vexing is the fact that the disposition of the case leaves open the possibility of either double liability on the part of Ace or double compensation on the part of DeGidio. Notwithstanding

DeGidio's recovery against Ace, Ace may well have further exposure for breach of warranty asserted by the ultimate users. DeGidio, on the other hand, having been paid in full by the ultimate users, may enjoy a windfall of duplicate compensation by recovering against Ace in these proceedings unless DeGidio is called on by its purchasers to make restitution. This last issue is one which the trial court would not permit the parties to litigate since none of the buyers has been made a party to the action.

It may be understandable why neither party wished to join the nursing home and schools as parties to the litigation. Nevertheless, we have concluded that if, as the trial court held, the burners which DeGidio installed were in fact valueless, DeGidio is entitled to recover against Ace for breach of warranty and that DeGidio's ultimate disposition of the defective equipment is not relevant to the issues between Ace and DeGidio. Apart from what appears to be the right to recover under the common law and now under the Uniform Commercial Code, if the burners were valueless, clearly DeGidio had a liability to his vendees to make them whole. This, of course, would involve a liability for reinstalling burners which would operate properly for the purposes intended. In short, we are of the opinion that having found DeGidio and Ace to be buyer and seller, DeGidio is entitled to damages for breach of warranty without reference to what profit it may have realized from the sale and installation of the burners or what other arrangements it may have made to correct the problems the burners presented due to their faulty design and construction.

Minn. St. 336.2—714 provides:

"(1) Where the buyer has accepted goods and given notification (subsection (3) of section 336.2—607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value

of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3)   In a proper case any incidental and consequential damages under the next section may also be recovered."

Ace argues that it was manifestly improper for the jury to award the full cost of the burners, $18,200, since, with one exception, they were still in use at the time of trial. It is contended that the testimony of plaintiff was directed at the value of the burners at the time of trial, rather than at the time they were accepted. Ace cites KLPR TV, Inc. v. Visual Electronics Corp. 465 F. 2d 1382 (8 Cir. 1972), where the court stated that there was no substantial evidentiary support for a determination that the property in dispute was worthless at the time it was accepted and that the trial court improperly relied on the value at the time of trial which was nearly 3 years after delivery when the equipment was still in use. While in the instant case the continued use of most of the equipment was certainly some evidence it had value, it was not conclusive on the factfinders. There was both expert testimony and testimony by employees of plaintiff, as well as by those familiar with the problem, that the equipment was of no value. Ace refused to accept back the defective burners. More important, Ace offered no evidence whatever of the value of the equipment at the time of its delivery to rebut the testimony of plaintiff's witnesses. It relied on Miamisburg Twine & Cordage Co. v. Wohlhuter, 71 Minn. 484, 486, 74 N. W. 175, 176 (1898), where we said:

"* * * In the absence of other evidence, the purchase price is prima facie its value, if it was as warranted."

Ace further relies on Truesdale v. Friedman, 270 Minn. 109, 127, 132 N. W. 2d 854, 866 (1965). In that case we held that a gasoline service station was not entitled to damages where it alleged that it received from the defendant distributor improperly labeled gasoline. The plaintiff failed to prove the gasoline was in fact

not of the quality represented. An isolated observation in that opinion that the resale to customers had a bearing on damages was simply dictum not necessary for disposition of the issues.

The trial court held in the instant case:

"* * * The jury was justified under the evidence in finding that the burners were worthless or even from plaintiff's standpoint worse than useless. If DeGidio replaces them it may well be at an expense greater than the amount of the verdict."

We hold that on this record the jury and the court could properly find that the burners at the time of delivery had no value for the purposes intended.

3. The final issue for disposition is whether or not incidental or consequential damages amounting to approximately $9,300 were justified. An additional award of $2,100 is not seriously disputed since that was the actual out-of-pocket expense incurred by DeGidio in replacing a burner at the Hilltop School. None of these incidental or consequential damages was expressly awarded plaintiff but were lumped with the value of the burners into a single verdict amounting to $29,600. Nevertheless, it seems obvious that the jury arrived at that figure by totaling the following amounts:

$18,200 for the burners;
$ 3,300 for installing boilers;
$ 3,850 for electrical and hookup costs;
$ 2,200 for startup costs;
$ 2,100 for replacing the Hilltop burner.

While not conceding the point, DeGidio recognizes in its brief that an award of $2,100 for the replacement of the Hilltop School burner and $1,750, which was the original cost of that burner, might be treated by the court as a duplication. We believe that the verdict strongly suggests that this was a duplication and accordingly order a remittitur of $1,750.

The section of the Uniform Commercial Code dealing with in-

cidental and consequential damages is 336.2—715 which provides as follows:

"(1)  Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2)  Consequential damages resulting from the seller's breach include

(a)  any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b)  injury to person or property proximately resulting from any breach of warranty."

We have touched on defendant's contention that to the extent plaintiff has not replaced burners supplied to its customers, plaintiff has been fully paid for installation and other expenses incidental to putting the burners into operation. Without reiterating what we have previously said, we are of the opinion that in the light of a finding the burners had no value it is inescapable that DeGidio is confronted with liability for correcting the defects. Indeed, DeGidio argues that at today's inflated costs the verdict was inadequate to meet the expenses of replacement with which he is now faced. Ace did, in fact, credit DeGidio with the sum of $8,637.70 for excessive maintenance imposed on DeGidio because of the defects in the burners. Although this adjustment was not treated by the parties as an element in the case, Ace suggests that it was sufficient to meet any of the claims for which it was liable. However, for the reasons we have stated, we hold that the additional damages awarded were proper as being incidental and consequential within the purview of Minn. St. 336.2—715.

Remanded for a remittitur of $1,750.
No costs shall be allowed either party.