Florence E. PETERSON, Respondent,

v.

BENDIX HOME SYSTEMS, INC., Appellant,

Heritage Homes, Inc., Defendant.

No. 81–748.

Supreme Court of Minnesota.

April 16, 1982.

Nichols & Kruger, Richard J. Kruger and Katherine A. Constantine, Minneapolis, for appellant.

Taylor Law Firm, David W. Kocur and Thomas F. Meany, Minneapolis, for Peterson.

SIMONETT, Justice.

Although the jury found the plaintiff purchaser more at fault than the defendant manufacturer on a breach of warranty claim, the trial court ruled that the purchaser could recover the entire damages awarded for loss in value of the product and incidental expenses. The defendant manufacturer appeals this ruling and also claims that the evidence does not support the amount of damages. The plaintiff purchaser, by notice of review, claims the trial court erred in denying her attorneys fees. We affirm on all three issues.

Plaintiff Florence E. Peterson purchased a new mobile home, manufactured by defendant Bendix Home Systems, Inc. (Bendix), from the local dealer, defendant Heritage Homes, Inc. Mrs. Peterson found that she could not live in the unit, claiming that

a strong odor emanating from the home caused her to suffer from facial rash, burning eyes, an irritated throat and a persistent cough. After complaining to both the dealer and the manufacturer with unsatisfactory results, Mrs. Peterson sued both defendants, claiming that formaldehyde fumes had made her mobile home uninhabitable. In her complaint, Mrs. Peterson alleged strict liability in tort; negligence in design, construction and distribution; breach of express warranty; and breach of implied warranties of merchantability and fitness for intended purpose. As damages, Mrs. Peterson claimed loss in value of the mobile home, incidental damages incurred in installing the home, and consequential damages consisting of personal injuries, that is, the adverse effect of the home on her health.

At the close of the testimony, the trial court directed a verdict in favor of the dealer, Heritage Homes, Inc., pursuant to Minn.Stat. § 544.41 (1980). The trial court also directed a verdict in favor of the manufacturer Bendix on negligence. In its answers to the special verdict on the remaining questions, the jury found that: (1) the mobile home was not unreasonably dangerous to an ordinary user; (2) Bendix had made and honored an express warranty; (3) Bendix had not breached its implied warranty of fitness for a particular purpose; but (4) Bendix had breached its implied warranty of merchantability.

The jury thus found that Bendix had successfully defended all theories of liability against it except breach of implied warranty of merchantability. The jury was then asked to compare "the combined fault that caused the damages" and answered that Bendix was only 25% at fault while Florence Peterson was 75% at fault. The jury found the difference in value between the mobile home as warranted and as delivered to be $15,000, the incidental damages for installation and utility hookups to be $2,500, and the damages for physical harm suffered by Mrs. Peterson to be $5,000.

Since Mrs. Peterson was more at fault than Bendix, the court correctly ruled she was not entitled to recover the $5,000 damages for harm to her person. Plaintiff does not challenge this ruling on appeal. The trial court further ruled, however, that plaintiff's 75% fault did not defeat her other damage claims and ordered judgment entered in favor of plaintiff and against defendant Bendix for $17,500.

Appellant Bendix argues that, since plaintiff's breach of warranty claim sounds in tort, the plaintiff's contributory fault applies regardless of the kind of loss or harm, whether the damages are general, incidental or consequential. Appellant contends its position is sustained both by the wording of our Comparative Fault Statute and by case law.

## I. The Applicability of Comparative Fault.

A. *The elements of a breach of warranty action.* Originally warranty actions were seen as tortlike breaches of the seller's representations and assurances to the buyer, but their central role in sales law led them to be treated more generally as an element of contract law. Thus, warranties evolved as a unique amalgam of tort and contract law. As warranty began to be used more and more to cover consequential harms caused by defective products, however, the tortlike nature of the actions was increasingly emphasized.

So, in a leading Minnesota case abolishing privity requirements for breach of warranty actions, the tort basis of warranty was used to establish that a buyer could sue a manufacturer for a defective product, even though the buyer's "contract" had been with the seller-dealer and not the manufacturer. *Beck v. Spindler*, 256 Minn. 543, 99 N.W.2d 670 (1959). Then, in 1978, our comparative negligence statute was amended to include fault, and "fault" was defined as including, among other things, breach of warranty and misuse of product. Minn. Stat. § 604.01, subd. 1a (1980).

▬ To establish a warranty claim the plaintiff must basically prove: the existence of a warranty, a breach, and a causal link between the breach and the alleged

harm. An implied warranty of merchantability is defined as requiring that goods be "fit for the ordinary purposes for which such goods are used." Minn.Stat. § 336.2–314(2)(c) (1980). This warranty is breached when the product is defective to a normal buyer making ordinary use of the product. Thus, even if the plaintiff has been harmed, a manufacturer may still be able to show no breach by showing that the buyer was somehow "abnormal" or that the product was not used in an ordinary way and that, consequently, the product was not defective to an ordinary user. If, however, a breach is established, the plaintiff must next prove the alleged harm was caused by the product's defect. If plaintiff's harm was caused by something other than the breach, there is no recovery.

The Uniform Commercial Code provides three types of damages for the kinds of harm caused by a breach of warranty. *General damages* are the difference in value between the goods as accepted and what they would have been worth as warranted. Minn.Stat. § 336.2–714(2) (1980). Second, *incidental damages* are those expenses reasonably incurred in receipt and custody of the product. Minn.Stat. § 336.2–715(1) (1980). Third, *consequential damages* are injuries to person or property proximately resulting from the breach. Minn.Stat. § 336.2–715(2)(b) (1980). In this case, all three kinds of damages were claimed; and the trial court, aware of the parties' differing contentions on the applicability of comparative fault, so designed the verdict form by separating the kinds of damages that the jury's answers could be used in any event.

■ B. *Defenses to the warranty. action.* We have consistently held that contributory negligence is a defense to a breach of warranty action insofar as consequential damages are concerned. *Gardner v. Coca-Cola Bottling Co.,* 267 Minn. 505,

511, 127 N.W.2d 557, 562 (1964). *See Chatfield v. Sherwin-Williams Co.,* 266 N.W.2d 171, 176 (Minn.1978), where this court stated that "reducing a party's *consequential* damages by an amount reflecting the extent to which his own conduct caused them appears to be equitable * * *" (emphasis added). Our Comparative Fault Statute, as now amended, makes clear that comparative fault should similarly be a defense to consequential damages in breach of warranty actions.

■ At issue here, however, is whether comparative fault should also apply to nonconsequential damages. Our prior case law strongly suggests that this is not so.[1] The trial court relied on language in *Nelson v. Anderson,* 245 Minn. 445, 451, 72 N.W.2d 861, 865 (1955), in ruling for the plaintiff. Only consequential damages were at issue in *Nelson,* but there we stated in dicta, quoting from dicta in a New York decision, *Razey v. J. B. Colt Co.,* 106 App.Div. 103, 106, 94 N.Y.S. 59, 61 (1905), that:

"Where the plaintiff seeks to recover damages for a breach of a general warranty, which are usually the difference between the value of the thing as it is in fact and as it was warranted to be, the question of negligence does not enter; but, where he seeks to recover consequential damages, he should not be permitted to recover for his own negligence."

When we look at the Comparative Fault Statute, we find the language inconclusive as to whether contributory fault should apply to nonconsequential damages. Subdivision 1(a) simply defines "fault" as including negligent or reckless conduct "toward the person or property of the actor or others * * *." Minn.Stat. § 604.01, subd. 1a (1980). It is helpful, therefore, to refer to the Commission's comments to section 1 of the Uniform Comparative Fault Act from which our state's statute derives:

1. Bendix argues that *Jack Frost, Inc. v. Engineered Building Components Co., Inc.,* 304 N.W.2d 346 (Minn.1981), supports its contention. There plaintiff sued for damages for collapse of a chicken barn caused by defective trusses. The trial court diminished plaintiff's verdict for all damages, including the trusses, by plaintiff's 30% negligence. The case is no precedent here; *Jack Frost* made no attempt to separate out the different items of total damages, and the issue of whether comparative negligence applies to loss of value of the product in a warranty case was never raised by the parties nor discussed by the court.

An action for breach of warranty is held to sound sometimes in tort and sometimes in contract. There is no intent to include in the coverage of the Act actions that are fully contractual in their gravamen and in which the plaintiff is suing solely because he did not recover what he contracted to receive.

12 U.L.A. 35 (Supp.1982).

■ Such is our case here. As to general damages (the loss in value of the mobile home from its warranted value), Mrs. Peterson is only suing to recover for what she contracted to receive, namely, a habitable mobile home. Her claim in this respect is not to recover for damages to her person or to any other property that might be caused by the defective mobile home; rather her claim is to recover for the mobile home itself, a claim sounding in contract. Bendix argues that plaintiff "failed to pursue her remedies under the Uniform Commercial Code and thus respondent is limited to her breach of warranty claim within the Comparative Fault Statute." We have difficulty understanding this argument. The Comparative Fault Statute does not create any claims or causes of action; it only prescribes how losses under claims arising elsewhere are to be allocated among the parties. Mrs. Peterson's breach of warranty claim arises under the Uniform Commercial Code, specifically section 336.2–314 (implied warranty of merchantability) and sections 336.2–714(2) and 336.2–715 (remedies for breach). This claim, insofar as it is for general and incidental damages, is not subject to the fault allocation formula of the Comparative Fault Statute.

The same result emerges from an analysis of the warranty claim itself. Since the buyer did not design or make the defective product, the buyer cannot be legally responsible for the original defect. Ordinarily, a buyer's contributory fault in a warranty action will be some kind of product misuse or assumption of risk. But while the buyer's acts may bring on or avoid certain consequential harms from the product and thus bar recovery for such consequential harms, this conduct should not affect the buyer's right to recover money paid for the defective goods.[2] The buyer is seeking a remedy for a bad bargain, a matter more like contract, not for consequential damages resulting from a bad product, a matter more like tort. This is also the view of the commentators. In his article entitled *Buyer's Conduct as Affecting the Extent of Manufacturer's Liability in Warranty*, Joel R. Levine states flatly: "Consideration of the buyer's fault would be limited to the issue of consequential damages." 52 Minn. L.Rev. 627, 651 (1968). *See also* M. Steenson, *The Anatomy of Products Liability in Minnesota: Principles of Loss Allocation*, 6 Wm. Mitchell L.Rev. 243, 338 (1980), and 63 Am.Jur.2d *Products Liability* § 99 at 104.

■ C. *The nature of plaintiff's fault.* At trial, Bendix attempted to show no breach of warranty of merchantability by evidence that its product was not defective to the ordinary user. To accomplish this, Bendix had to show either that Mrs. Peterson's own conduct created the problems in her home or that she was so hypersensitive to formaldehyde that she was not an ordi-

**2.** Assumption of risk occurs, of course, after knowledge of the defect. Misuse, too, occurs after the buyer's discovery of the defect. 1 Hursh, *American Law of Products Liability* 623 (2d ed. 1974); 2 Frumer, *Products Liability* § 16.01(3) (1981). *See Moosbrugger v. McGraw-Edison Co.*, 284 Minn. 143, 146 n. 1, 170 N.W.2d 72, 75 n. 1 (1969).

One can conceive of a situation in which the buyer's misuse may bear on damages to the product itself, such as a buyer driving his car with a known defect thus further diminishing the value of the car. But even here, the issue put to the jury is "the difference *at the time and place of acceptance* between the value of the goods accepted and the value they would have had if they had been as warranted * * *." U.C.C. § 2–714(2) (emphasis added). In other words, the jury only awards damages for the loss in value of the product resulting from the warranty breach, not for any further loss incurred subsequently from the buyer's misuse. The code provision goes on to say this is the measure of damages "unless special circumstances show proximate damages of a different amount," thus allowing for special cases that might arise.

nary consumer.[3] On appeal, however, Bendix does not seek to disturb the jury's finding that it breached its warranty of merchantability, nor does it seek to set aside the jury's finding that its fault contributed to cause Mrs. Peterson's damages. Before us, Bendix accepts the jury's determinations and argues that the jury's finding of 75% fault on Mrs. Peterson bars her from any recovery at all.

Bendix points to the jury's finding that, in the words of the special verdict, Mrs. Peterson's behavior "caused the damages claimed." Since only one comparative fault question was given to the jury, Bendix argues the jury must have found plaintiff's fault contributed to cause a diminution in the value of the mobile home itself. If this were so, it would mean our holding that contributory fault is not a defense to general damages in a warranty action is inconsistent with the true facts. Bendix's argument, however, does not withstand close analysis.

Bendix lists numerous acts on which the jury could have based a finding of fault against Mrs. Peterson: that Mrs. Peterson could have been at fault for failing to return the home to the dealer, failing to sell the home elsewhere, failing to recognize the odor when inspecting the home before purchase, using a medication for hypertension which caused a symptomatic reaction, failing to use the dehumidifier supplied by Bendix, and failing to obey the order of her doctor to move out of the mobile home.

While any or all of these failures may well have contributed to plaintiff's consequential damages for her health problems, none, it is clear, could have created the defect in the home itself, namely, the unacceptable level of formaldehyde fumes which made the home uninhabitable. Failing to move out of the home has nothing to do with what is wrong with the home in the first place.

In addition, Bendix says the jury may have found Mrs. Peterson at fault for bringing a deodorizer and various personal belongings into the mobile home, both of which contained some formaldehyde. This evidence might have been relevant on the issue of breach of warranty, to show the mobile home was uninhabitable because of formaldehyde from sources foreign to the mobile home itself; the jury, however, decided this issue adversely to Bendix. The evidence, including a report of Bendix's own people, amply indicated that it was the particleboard in the home that was the substantial source of the formaldehyde problem. On the other hand, Mrs. Peterson's fault (if it was a fault), in bringing items into the already defective home which might contain formaldehyde, would go to the issue of contributory fault on the consequential damages claim and may have been taken into account on that issue by the jury.

D. To sum up, we hold, in a buyer's action for breach of warranty against the manufacturer of a product for damages to the product itself and for incidental damages, that the Comparative Fault Statute is not applicable and the buyer's contributory fault is not a defense. We affirm the trial court's ruling that plaintiff's fault did not bar her recovery for nonconsequential damages, only for consequential damages.

II. *The Award of Damages.*

██ Bendix complains that the evidence does not support a finding of a loss in value of $15,000 for the mobile home, and that, in any event, it is "particularly anomalous" for plaintiff to be awarded $15,000, the full price of the mobile home, and be allowed to keep the home as well.

---

3. Bendix tested the home and found formaldehyde levels high enough to warrant concern, ranging from .2 ppm to .5 ppm (parts per million). Bendix did a retrofit, applying varnish to the particleboard cabinets and inserting a foil barrier between the home's floor and the carpet. A postretrofit study by Bendix indicated all levels had been reduced to .2 ppm. A Bendix expert witness testified plaintiff's symptoms were consistent with a reaction to her own hypertension medicine which contained reserpine. Finally, plaintiff's expert testified that Mrs. Peterson was one of the four to eight percent of the population which was hypersensitive to formaldehyde, and that her symptoms were not caused by prior medical problems or medication but were a reaction to the formaldehyde in the mobile home.

A.   First of all, Bendix says Mrs. Peterson should not be able to keep the mobile home in addition to her money damages and cites *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349 (Minn.1977), and *Jacobs v. Rosemount Dodge-Winnebago South,* 310 N.W.2d 71 (Minn.1981), where the goods were returned to the seller.   But neither case is applicable here.   In both *Durfee* and *Jacobs* the buyer had elected to revoke acceptance of the product and was suing for return of the purchase price and incidental damages.   Here, on the other hand, plaintiff chose not to revoke acceptance but to affirm the contract, thus keeping the goods, and suing for damages.   (We might add that, contrary to appellant's contention, the evidence shows plaintiff did give notice of the breach, as required by section 336.2–608(2), within a reasonable time.)

B.   The heart of Bendix's complaint on damages is that the evidence does not support the jury's finding that the difference in value between the mobile home as warranted and as delivered was $15,000, the same as the purchase price, the jury finding no residual value to the home being kept by the plaintiff.   We hold there is sufficient evidence to support the jury's finding.

Both parties elected to go for all or nothing on damages.   Mrs. Peterson testified that her opinion was that she could not get even $1,000 for her home.   On the other hand, Maureen Wagner, one of the owners of Heritage Homes, testified for defendants that the mobile home "in the condition that I'm sure hers is in" was still worth what Mrs. Peterson had paid for it, $15,000.   Bendix points out that Mrs. Wagner's opinion was based on her extensive dealer experience and contends Mrs. Peterson's opinion is pure speculation.   While Mrs. Peterson admitted she had not put her home on the market, she did explain, "Well, if I were going to sell it, I would have to explain that I have formaldehyde problems, and I doubt if I could get $1,000.00 for it."   It seems to us this testimony, coupled with the evidence that Bendix repeatedly refused to buy back Mrs. Peterson's home, is a sufficient basis for the jury's award.   It is the jury's province to weigh opinion evidence by reference to all other facts and circumstances of the case.   *Poirier Manufacturing Co. v. Griffin,* 104 Minn. 239, 241, 116 N.W. 576, 577 (1908).   Bendix's claim that Mrs. Peterson gets a windfall by keeping the mobile home is negated by the jury's finding that the home has no value.   *Cf. Louis DeGidio v. Ace Engineering Co., Inc.,* 302 Minn. 19, 225 N.W.2d 217 (1974) (continued use of a defective product does not negate jury's finding that the product was of no value).

   C.   Plaintiff's post-trial motion for an award of attorneys fees and costs based on the provision for fees in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2) (1976), was denied by the trial court as untimely made and consequently unfair to the defendant to be considered in post-trial motions.   We agree, as plaintiff's complaint made no reference to the Magnuson-Moss Warranty Act and its provisions for attorneys fees.

Affirmed.