HULDA L. LOOMIS *vs.* NEW YORK, NEW HAVEN, AND
HARTFORD RAILROAD COMPANY.

Hampden.    September 27, 1892. — May 16, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Evidence — Letters written by Attorney — Agency — Weight and Competency of
Evidence — Offer to compromise.*

Evidence that after a former verdict two witnesses signed affidavits of their
knowledge of facts upon which a motion for a new trial was founded, to the
same effect as their testimony given at the last trial, is incompetent.

In an action for personal injuries occasioned to the plaintiff by falling upon some
steps in the defendant's railroad station, it appeared that a letter was written
on January 5 by the plaintiff's attorney to the defendant, stating that "the
cause of the accident was the snow and ice on the stairs." In answer to the
defendant's letter of January 7, asking for particulars, the plaintiff's attorney
wrote a letter on January 10, stating that the plaintiff fell "on the third or
fourth step from the bottom of the stairway across the tracks from the waiting-
room." *Held,* that the two letters last written, in connection with the first let-
ter of January 5, showed conclusively that writing the words quoted above
in the letter of January 10 were strictly within the authority of the attorney;
that the fact that they were not written by the plaintiff's own hand, but by an
agent who was acting under instructions received through her husband, who
was also her agent in the same business, affected the weight but not the com-
petency of the evidence; and that the letters were not inadmissible as part of
an offer to compromise a controverted claim. FIELD, C. J. & LATHROP, J.
dissented on the ground that the letters were not competent evidence.

TORT, for personal injuries occasioned to the plaintiff in con-
sequence of a fall upon some steps in the railroad station of the
defendant at Hartford, Connecticut, by reason of ice upon the
steps.

At the trial in the Superior Court, before *Hopkins,* J., it
appeared that there had been a trial of the case at a former
sitting of the court in July, 1891, and that a new trial was
granted.

It appeared in evidence that the plaintiff went from Spring-
field to Hartford on one of the defendant's trains, arriving at
about twenty minutes past twelve in the afternoon of January
1, 1891; that she passed from the platform to the waiting-room
by a staircase constructed of wood, which led down a course of

fifteen steps to a broad stair or landing eight feet square, and then, turning to the left, at right angles, descended six steps more to the passageway on a level with the floor of the waiting-room connected therewith; and that the lowest of the six steps was about thirty-five feet from the waiting-room.

This staircase was the regular staircase for passengers going from the platform to the waiting-room. There was no testimony from any person except the plaintiff as to the way in which she fell or the place where she fell, other than what appeared from her subsequent statements, as testified to by other witnesses, and as appeared from their testimony referred to hereafter. She testified that she had gone down the stairs but a very few steps from the platform where she alighted from the train, when she fell and received her injuries; that many persons were going down the stairs at the same time; that she fell three or four steps down, from the top of the long flight and almost to the broad stair, and did not fall at the bottom of the short flight referred to above; that she was helped up by two men who seemed to be travelling men, with ordinary hand luggage, whom she did not know and whom she had not since seen, and assisted into the waiting-room to a seat on a sofa; that soon after taking her seat upon the sofa she had a conversation with Quinn and Bugbey, who were afterwards produced as witnesses by the defendant; that she told them she fell on some ice on the stairs, but that she did not tell them on what stairs she fell or have with them the conversation stated by them; and that she had gone but a few steps before she fell, and must have been near the bottom of the long flight of stairs when she was picked up.

There was testimony from other witnesses tending to show that there was considerable ice upon the long flight of stairs, and from some others, that there was also ice upon the broad stair and the short flight of stairs.

The defendant introduced several witnesses who testified that there was no ice on any of the stairs on the whole staircase.

Quinn and Bugbey, the employees of the defendant with whom the plaintiff testified that she had conversation in the waiting-room immediately after her fall and while she was sitting on the sofa, and to whom she stated that she fell on the ice on the stairway, testified that they did not pick up the plain-

tiff at the place where she fell, but after she was seated in the waiting-room they rendered her assistance. They further testified that at that interview she told them that she fell on the ice on the bottom stair out in the passageway, pointing directly to it; that thereupon Bugbey went out to examine the place, and came back to her and told her in Quinn's presence that she must be mistaken; that he had been out to examine, and there was not a particle of ice on the bottom stair, and that he had furthermore gone up the whole length of the stairs and they were entirely free from ice; and then he said to her, " Are n't you mistaken? Is n't it probable that you caught your heel and that that caused your fall? " and that she replied, " Well, it may have been so, — I cannot tell; because I came down so quick, I cannot tell how it did happen."

The defendant also introduced as witnesses Watkins and Potter, two carpenters, who testified that they were working for the defendant in the passageway at the bottom of the short flight of stairs at the time that the plaintiff came down from the train, and that they were standing close by the said short flight of stairs, and saw the plaintiff fall on the last of said stairs except one at the bottom, and that they both at once took hold of her, and assisted her to rise, and helped her along toward the waiting-room until they saw she was able to care for herself; that there was no ice upon any of the short flight of stairs, or on the broad stair, or the long flight above. Watkins and Potter did not testify at the first trial.

The defendant offered to prove as a fact, from the record, that Watkins and Potter signed affidavits of their knowledge of the facts upon which the motion for a new trial was founded, and that their affidavits were filed with the motion, August 5, 1891. The judge refused to receive the evidence, and the defendant excepted.

The defendant produced in court, and offered to introduce in evidence, two letters, of which the following are copies, written by a clerk in the office of James B. Carroll, the plaintiff's attorney, to wit:

" Springfield, Mass., Jan'y 5, 1891. Mr. Wm. E. Barnett, Executive Secretary, N. Y., N. H., and H. R. R. Co., New Haven, Conn. Sir: Mrs. Hulda L. Loomis of this city, on Thursday,

January 1, 1891, fell down the stairs of your depot at Hartford, just after arriving on the 11.45 A. M. train from here. The cause of the accident was the snow and ice on the stairs. Her spine is affected, and she has received severe internal injuries. Please let me hear from you. Yours truly, James B. Carroll. F."

"Springfield, Mass., Jan'y 10, 1891. Wm. E. Barnett, Exec. Sec'y, N. Y., N. H., and H. R. R. Co., New Haven, Conn. Sir: In reply to yours of the 7th inst., regarding the accident to Mrs. Loomis, I would state that she fell on the third or fourth step from the bottom of the stairway across the tracks from the waiting-room. Your men picked her up after her fall and know where it occurred. It is impossible now to state how much she will take for compensation, as her illness and injury are so serious at present that one cannot tell how permanent may be their effects. Yours truly, James B. Carroll. F."

It was proved that the clerk had the same authority to write the letters which Mr. Carroll, as attorney for the plaintiff, had, and it was further proved that these letters were received in due course of mail by the defendant.

The letter of January 10 was in answer to the following letter of the defendant, which it offered in evidence:

"New Haven, Conn, Jan. 7th, 1891. James B. Carroll, Esq., Springfield, Mass. Dear Sir: Referring to yours of Jan. 5th, in regard to claim of Mrs. Loomis, will you kindly state precisely the place where she fell, and what amount she claims should be paid to her? Yours truly, Wm. E. Barnett, Exec. Sec'y."

The above letters, a letter of the defendant of January 12, 1891, containing statements favorable to the defendant, and a letter of the plaintiff's attorney of January 13, 1891, containing comments outside the scope of his employment, were all excluded, and the defendant excepted. It was proved that the husband of the plaintiff, as her agent, secured Mr. Carroll as attorney for the plaintiff after the accident in January, 1891, and that he did not see her until less than two weeks before the first trial of the action, which was long after the letters were written.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The case was submitted on briefs to all the judges.

*G. D. Robinson & W. S. Robinson*, for the defendant.

*J. B. Carroll*, for the plaintiff.

KNOWLTON, J.   The evidence that after the former verdict the witnesses Watkins and Potter signed affidavits of their knowledge of facts upon which the motion for a new trial was founded, to the same effect as their testimony given at the last trial, was rightly excluded.   The defendant could not add force to their testimony by showing that they had made the same statements a long time before.   If there had been evidence from which the plaintiff could properly have argued that their testimony was manufactured just before the trial, a different question would be presented.   But there was nothing on which to raise such an issue.   If the jury were informed that these witnesses did not testify at the first trial, any inference to be drawn from that fact could be met without giving their former statements. *Murchie* v. *Cornell*, 155 Mass. 60.

The principal question in the case relates to the admissibility of a letter written to the defendant by a clerk of the plaintiff's attorney, under authority from the attorney, purporting to state the facts on which her claim was founded.   The bill of exceptions sets forth two letters written to the defendant by this clerk, two written to the attorney by the executive secretary of the defendant, and one afterwards written to the defendant by the attorney with his own hand.   The first two, written by the clerk under authority from the attorney, were first offered, then testimony was introduced, and the defendant offered the letter from the attorney to the defendant, "and also the letters of the defendant to Mr. Carroll," the attorney, and exceptions were taken to the refusal to admit them.   It is clear that the defendant was not entitled to introduce the entire correspondence, for it contains statements of the executive secretary favorable to the defendant, which were not competent.   Perhaps, also, the last letter of the plaintiff's attorney which he wrote with his own hand was inadmissible as containing opinions and comments which were strictly personal and outside of the scope of his employment.   It is contended that the only question open to the defendant is whether the entire correspondence was competent, but we are of opinion that the question whether the first two letters were competent was intended to be saved by the bill of exceptions.

The object of the evidence was to show that, when the plaintiff presented her claim through her attorney, it was for a fall at a place near where the defendant's evidence at the trial tended to show that it occurred, and where the stairs were in perfect condition, and not at the place where the plaintiff located it in her testimony. Upon the issue raised, the fact sought to be proved was material and important. We are also of opinion that the method of proof was competent and proper.

The undisputed evidence tends to show that the attorney had been employed to represent her in the collection of a claim against the defendant for damages resulting from a fall in the defendant's railroad station at Hartford. The terms of his employment do not expressly appear. But a fair inference from the evidence is that he was not merely employed to bring a suit, but was authorized to present the plaintiff's claim, and to endeavor to obtain a settlement of it without a suit. If this was his authority, we have no occasion to consider the cases holding that admissions which are mere matters of conversation with an attorney, though they relate to the facts in controversy, cannot be received in evidence against his client. Such admissions are not within the scope of his employment. Nor have we any reason to consider in this case the general authority of an attorney, by virtue of his position as an attorney at law, in charge of a suit, to bind his client by agreements in reference to the management or disposition of the suit. See *Lewis* v. *Sumner,* 13 Met. 269 ; *Saunders* v. *McCarthy,* 8 Allen, 42 ; *Pickert* v. *Hair,* 146 Mass. 1. The maxim, *Qui facit per alium facit per se,* applies as well to acts done or statements made by an attorney at law as by any other agent. The act of a party done by his agent may always be proved against him if material.

An attorney or agent employed to present and collect a claim is impliedly authorized to state to the debtor what the claim is. The plaintiff could not have expected that her attorney would collect her claim from the defendant on demand, without stating the nature and particulars of it, so that the defendant could understand it, and make investigation in regard to its validity. It was as much a part of his duty to state as nearly as possible the precise place in the building where the accident happened, if asked to, as to state in what town or State the

plaintiff was when she fell.  The defendant's letter of January
7, 1891, inquiring for particulars, is competent, in connection
with the letter of January 10, which purports to be an answer
to it, to show how the statement came to be made; and the
two together, in connection with the first letter of January 5,
show conclusively that writing the words, " she fell on the third
or fourth step from the bottom of the stairway across the tracks
from the waiting-room," was strictly within the authority of
her attorney, employed to present and collect her claim.   The
fact that they were not written by her own hand, but by an
agent who was acting under instructions received through her
husband, who was also her agent in the same business, affects
the weight, but not the competency, of the evidence.  1 Greenl.
Ev. § 186.  *Marshall* v. *Cliff*, 4 Camp. 133.  *Baring* v. *Clark*,
19 Pick. 220.  *Woods* v. *Clark*, 24 Pick. 35, 39.  *Cooley* v. *Nor-
ton*, 4 Cush. 93.  *Morse* v. *Connecticut River Railroad*, 6 Gray,
450.  *Haney* v. *Donnelly*, 12 Gray, 361.  *Gott* v. *Dinsmore*, 111
Mass. 45.  *McAvoy* v. *Wright*, 137 Mass. 207.

There is nothing in the adjudication in *Pickert* v. *Hair*, 146
Mass. 1, nor in the language of the opinion as applied to the
matters then under consideration, which is at variance with the
views above stated.

The letters are not inadmissible as part of an offer to com-
promise a controverted claim.  At the time they were written
there had been no intimation on the part of the defendant that
the plaintiff would not be paid all that she thought it right
to ask.  The only communication which had been received from
the defendant indicated a desire to ascertain the truth, as if for
the purpose of promptly paying the claim if it appeared to be
valid.                                         *Exceptions sustained.*


LATHROP, J.  I am unable to concur in the opinion of the
majority of the court.

If it is assumed that the question of the admissibility of the
first two letters written by the clerk of the attorney for the
plaintiff is open on the exceptions, a point which is not free
from doubt, and if it is also assumed that the evidence sought
to be introduced is material, a point about which there is also a
doubt, as the evidence for the plaintiff tended to show that there

was ice on all the steps, and the evidence for the defendant tended to show that there was no ice on any of the steps, I do not agree that the letters were competent evidence.

There was no evidence that the letters in question were written by the direct authority of the plaintiff, or by her consent, or even with her knowledge. There was no evidence that at the time of the accident Mr. Carroll was the plaintiff's attorney; and he could have had no personal knowledge on the subject, as it appeared that he was retained as an attorney at law after the accident by the plaintiff's husband, and did not see her until less than two weeks before the first trial of the action, which was long after the letters were written.

In *Pickert* v. *Hair*, 146 Mass. 1, the question as to the effect of an admission made by Mr. Thayer, an attorney, after an action brought, but before the beginning of the case then before the court, was considered. One of the grounds of the decision was thus stated on page 5 : " The admission was not made by Mr. Thayer for the purpose of dispensing with any rule of practice, or with the proof of any fact in the trial of the action already brought, or of the actions which might be brought, in reference to the attached property. It was a conversation relating to a fact in controversy, but not an agreement relating to the management and trial of a suit, or an admission intended to influence the procedure in the pending action, or in any other, if the attachment was not discharged."

In support of these propositions several cases are cited, and an examination of them shows that the doctrine hitherto established is that an admission by an attorney does not bind his client, although it relates to a fact in controversy, unless it is made for the purpose of dispensing with some rule of practice, or with the proof of a fact in the trial of a case, or is an admission intended to influence the procedure in the action. To the same effect are the following cases : *Rockwell* v. *Taylor*, 41 Conn. 55. *McKeen* v. *Gammon*, 33 Maine, 187. *Cassels* v. *Usry*, 51 Ga. 621.

The opinion of the majority of the court apparently proceeds upon the theory that an attorney stands in a different relation to his client before an action is brought from that which he occupies afterwards. But no case is cited which sustains this

position. The general rule that an attorney cannot, without the consent of his client, disclose a confidential communication made to him by his client, applies as well to communications made before action brought as afterwards. See *Foster* v. *Hall*, 12 Pick. 89, and cases cited.

With one exception, the cases cited in the opinion of the majority of the court in support of the propositions that an attorney is merely an agent, and that his admission binds his principal, are cases of mere agents, and not of attorneys. They seem to throw no light on the question in this case.

The case of *Marshall* v. *Cliff*, 4 Camp. 133, remains to be considered. This was an action against the owners of a vessel. To prove the defendants to be the owners, there was offered in evidence an undertaking in the following form, given before the action was begun by the persons who were afterwards the defendant's attorneys of record : " I hereby undertake to appear for Messrs. Thompson and Marshall, joint owners of the sloop Arundel, to any action you may think fit to bring against them." This was held by Lord Ellenborough to be sufficient evidence. But, as was pointed out by Mr. Justice Parke, in *Wagstaff* v. *Wilson*, 4 B. & Ad. 339, the undertaking was " a step in the cause."

I am authorized to state that Chief Justice Field concurs in this opinion.