# VICTOR CARROLL, d.b.a. CARROLL CONSTRUCTION COMPANY, v. WILLIAM PRATT AND OTHERS.

76 N. W. (2d) 693.

April 27, 1956—No. 36,730.

*Philip L. Scherer,* for appellant.
*Lauerman, Johnson & Gustafson,* for respondent.

MATSON, JUSTICE.

Plaintiff appeals from an order denying his motion for a new trial.

About October 10, 1950, plaintiff entered into a contract with the counties of Renville and Sibley for the repair of Judicial Ditch No. 8. Shortly thereafter plaintiff, by oral agreement, sublet to the respondent, herein called the defendant, the cutting and the burial or disposal of the trunks and branches of trees growing on the ditch right-of-way for an agreed price of $1.30 per tree. Pursuant to this oral agreement, plaintiff reserved for himself the burial and disposal of the tree stumps.

In 1951 defendant commenced to perform the oral sub-contract and in the fall of that year claimed that he had completed the cutting of the trees and the burial or disposal of the tree trunks and branches. At that time he received $6,886.80 for his work. In the spring of 1952, E. L. Chamberlain, the engineer in charge of the ditch repair project, received complaints about the tree disposal from farmers living on farms which the ditch crossed. During the summer of 1952 plaintiff continued to work on the ditch, and on December 26, 1952, the engineer filed his final certificate of completion indicating that plaintiff had completed in a satisfactory manner the ditch repair work required of him under his general contract.

In February 1953 plaintiff brought this action against the defendant (and against certain other parties against whom the action was subsequently dismissed) to recover damages for breach of contract

on the ground that the defendant had allegedly failed to bury and dispose of the tree trunks and branches as required by the oral agreement. In his answer denying a breach of contract, defendant interposed a counterclaim alleging that he had cut and disposed of 9,000 trees which at the rate of $1.30 per tree entitled him to the sum of $11,700, or $4,813.20 more than he had already been paid by the plaintiff.

The trial court, after first finding that the terms of the oral agreement were substantially as above set forth, found that plaintiff had failed to sustain his burden of proof in establishing a breach of contract. Upon the counterclaim it found that the defendant had cut, buried, or otherwise disposed of not less than 7,032 trees for which the defendant was entitled to $9,141.60, or $2,254.80 more than he had already been paid. Plaintiff appeals from an order denying his blended motion for amended findings or a new trial.

In addition to the question of whether the evidence sustains the trial court's findings, we are concerned upon this appeal with alleged errors in the admission and exclusion of evidence.

In order to understand fully plaintiff's contention that the evidence does not sustain the findings, it is to be noted that, after the engineer had certified that the ditch repair work had been completed but prior to the commencement of this action against the defendant, a dispute had arisen between the plaintiff and the two counties as to the number of trees which had been actually cut and disposed of and for which the plaintiff was to be paid. In the course of the ditch repair work it became evident that the number of trees to be cut and disposed of far exceeded the original estimate and, in consequence thereof, there were a number of recounts and readjustments. Pursuant to a stipulation between the two counties and the plaintiffs, to which the defendant was *not* a party, the District Court of Sibley County made an order determining that 7,032 trees had been cut. Upon this determination, plaintiff was paid under the general contract.

Whether defendant cut all the trees and buried or disposed of the tree trunks and branches substantially as agreed is purely a ques-

tion of fact. The evidence is not merely in conflict but in a state of confusion. There is evidence that the work sublet to the defendant, as well as the work reserved by the plaintiff for his own performance, was not completed entirely to the satisfaction of the engineer and that the plaintiff was therefore compelled in 1952 to incur additional expenses in completing the ditch repairs according to the specifications of the general contract. This 1952 completion work included, however, not only the burial of some tree trunks and branches but also the burial of stumps and stones and the leveling of the ditch banks. The unfinished portion of the work reserved for plaintiff's performance and any unfinished work assignable to defendant's subcontract were, from an evidentiary standpoint, so hopelessly intermingled that no trier of fact, without invading the realm of conjecture and speculation, could possibly separate one from the other so as to provide a factual foundation for an award of damages against the defendant. Clearly, the trial court was right in concluding that the plaintiff had not sustained his burden of proof in establishing a breach of contract upon which damages could be predicated in any amount whatsoever.

Furthermore, it is not to be overlooked that the engineer's testimony that some of the tree trunks and branches had not been buried is not conclusive in the face of much testimony by farmers that the tree trunks and branches had been disposed of in the fall of 1951.

■ Next, with respect to the counterclaim, we have plaintiff's contention that the evidence does not sustain a finding that defendant cut *not less than 7,032 trees* for which he was entitled to a total of $9,141.60 or $2,254.80 more than he had been paid. There was testimony, which the trial court could accept as true, that defendant buried or disposed of all the trees as required by the specifications. The engineer testified to a total count of 8,393 trees. One of his assistants related that beginning with sec. 24 he had counted 6,672 trees. The engineer himself said that a 1949 count had revealed 1,321 trees growing on the ditch from sec. 1 to sec. 23. These latter two figures give a total of 7,993. It is undisputed that someone had cut at least 7,032 trees. Although the evidence does not sustain the

allegation in defendant's pleading that he had cut 9,000 trees, the evidence would sustain a finding that he cut more than 7,032 trees. There is evidence, however, that defendant acquiesced in and agreed to accept payment upon the basis of the undisputed determination of the disposal of at least 7,032 trees. It is elementary that a trial court need not adopt the exact figures of any witness in determining either damages or the extent of performance, and as long as its finding is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole, such finding must be sustained.[1] The evidence here sustains the trial court's finding that the defendant cut and disposed of not less than 7,032 trees.

The evidence sustains the trial court's finding that the oral contract did not require the defendant to actually bury the trees and that it permitted him to dispose of the trees in some other manner. It follows therefore that there is no merit in the plaintiff's contention that defendant could not claim credit for the trees removed by the farmers pursuant to waivers executed by them, whereby they agreed to remove the trees themselves and release the defendant from the duty to do so. As long as the farmers disposed of the trees as they had agreed, defendant could claim credit therefor. In the light of the oral agreement, the trial court did not err in admitting into evidence the waivers or releases signed by the farmers.

Plaintiff asserts that the trial court erred in permitting the defendant to impeach his own witness. No impeachment was involved. The witness was asked if he had been on his brother's farm *during the summer when the trees were cut*. The answer was in the negative. Subsequently defendant asked the witness *whether he had ever been on his brother's farm in 1951*. Plaintiff's objection to this question was overruled. Obviously no impeachment was involved since the first question referred to a more limited period of time, that is, during the summer when the trees were being cut; whereas the second question referred to a longer period of time, namely, the entire year of 1951.

---

[1]See, Lovrenchich v. Collins, 233 Minn. 183, 46 N. W. (2d) 264; Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688.

 One of the defendant's witnesses, a farmer, testified that there was no debris remaining on the ditch where it passed through his farm in 1952 when the plaintiff claimed he had buried tree trunks and branches. Plaintiff offered to prove by another witness that the farmer had previously made a statement to the contrary. Plaintiff asserts that the trial court erred in sustaining an objection to the offer of proof since it was offered to impeach the farmer's testimony. It is a well-settled rule that a witness who has testified to material facts in a case may be impeached by showing that he has previously made statements relating to those facts which are contrary to his present testimony.[2] Although a witness may be impeached by showing a prior inconsistent statement, it is usually necessary to lay a proper foundation first on the cross-examination of the witness to be impeached by asking him whether he made the alleged inconsistent statement, giving its substance and the time, place, and person to whom made.[3]

The purpose of requiring a foundation are (1) to avoid unfair surprise to the adversary; (2) to save time, as an admission by the witness may make the extrinsic proof unnecessary; and (3) to give the witness, in fairness to him, a chance to explain the discrepancy.[4] Failure to lay a technically perfect foundation is not, however, ground for rejecting testimony of prior contradictory statements made by a witness out of court where it is clear that neither he nor the impeaching witness is misled thereby.[5] The trial court properly

---

[2]Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824; O'Connell v. Ward, 130 Minn. 443, 153 N. W. 865; State v. Callahan, 100 Minn. 63, 110 N. W. 342; see, McCormick, Evidence, § 34; 58 Am. Jur., Witnesses, § 767.

[3]Johnson v. Young, 127 Minn. 462, 149 N. W. 940; Heydman v. Red Wing Brick Co. 112 Minn. 158, 127 N. W. 561; McDonald v. Bayha, 93 Minn. 139, 100 N. W. 679; Horton v. Chadbourn, 31 Minn. 322, 17 N. W. 865; see, McCormick, Evidence, § 37; 58 Am. Jur., Witnesses, §§ 776, 779.

[4]Johnson v. Young, *supra;* State v. Hoyt, 13 Minn. 125 (132); Horton v. Chadbourn, *supra;* McCormick, Evidence, § 37; 58 Am. Jur., Witnesses, § 778.

[5]Johnson v. Young, *supra.* As to possible exceptions to, or qualifications of, the rule requiring a foundation for proof, see McCormick, Evidence, § 37; 58 Am. Jur., Witnesses, §§ 775 to 781; A. L. I., Model Code of Evidence, Rule 106, pp. 21, 117, 118.

sustained the objection to plaintiff's offer of proof for lack of a substantially proper foundation.

■ Plaintiff also offered to prove a conversation in 1952 during which Russell Frazee, who plaintiff claimed was defendant's attorney, allegedly stated that he had investigated the ditch and had found that the work of defendant had not been completed and that he would see if he could get defendant to finish the job. This offer was excluded on the ground of hearsay. Plaintiff contends that it should have been received as an admission on the part of the defendant. The cases are almost unanimous that out-of-court admissions of fact by an attorney, whether written or oral, which have not been made for the specific judicial purpose of dispensing with proof or for influencing the procedure in the case, are inadmissible in evidence against his client unless it appears that (aside from his mere employment in connection with pending or prospective litigation) the attorney had some special authority to act for his client and that such admission properly related to such special authorization. The mere existence of the relationship of attorney and client does not of itself supply the attorney with authorization to make extrajudicial admissions in behalf of his client, and whether he has been vested with such power to act for his client is to be measured by the same tests of express or implied authority as would be applied to other agents.[6] Here there was no showing by the plaintiff that Russell Frazee had special authority to make the alleged extrajudicial admission of fact in behalf of the defendant, and therefore the offer of proof was properly rejected.

The order of the trial court is affirmed.

Affirmed.

---

[6]McCormick, Evidence, § 244; 20 Am. Jur., Evidence, § 592; 4 Wigmore, Evidence (3 ed.) § 1063; Annotation, 97 A. L. R. 374; see, Brown v. Hebb, 167 Md. 535, 545, 175 A. 602, 607, 97 A. L. R. 366, 372; Jackson v. Schine Lexington Corp. 305 Ky. 823, 205 S. W. (2d) 1013; 7 Dunnell, Dig. (3 ed.) § 3412.