# ALVIN KOPET v. GEORGE KLEIN, d.b.a. MIRACLE WATER PRODUCTS.

148 N. W. (2d) 385.

January 27, 1967—No. 40,200.

*Robert M. Greising,* for appellant.
*Harry Christian,* for respondent.

526

NELSON, JUSTICE.

This is an appeal from an order of the trial court denying a motion of defendant, George Klein, doing business as Miracle Water Products, for judgment notwithstanding the verdict or for a new trial.

Defendant was the distributor of certain water-softening devices and equipment manufactured by Water Refining Company, Inc. The latter, however, was not served with a summons and complaint.

On March 19, 1964, defendant sold a water softener to plaintiff which was designed to regenerate automatically at preset intervals. The purchase price of the unit was $279 including installation. The water softener was installed at plaintiff's home by defendant and his local agent, Art Schuster, who set the various dials with which the softener was equipped so that the unit would function automatically.

The unit functioned properly for the first 2 weeks except that even for that period it consumed an excessive amount of salt. Plaintiff contacted Schuster and informed him of this difficulty. After trying at least a dozen times to make the machine work properly, Schuster told plaintiff that he couldn't handle the problem but would notify defendant. It appears that plaintiff himself didn't notify defendant directly about the difficulties plaintiff had been experiencing in the operation of the unit until 6 months after its installation. After receiving direct notice from plaintiff, defendant sent down one of his men, a mechanic, to inspect the unit. The mechanic adjusted the setting. For some time thereafter it appears that the unit would regenerate automatically, but at odd hours, and would overflow, causing damage to plaintiff's basement floor. During the 2 months preceding the trial the machine had to be started manually.

In March 1965 plaintiff's attorney advised defendant that the unit was not operating properly and that he should replace it or refund the purchase price. While the sale was made March 19, 1964, defendant admitted, when called for cross-examination under the rules, that he knew about the difficulties plaintiff was having during the month of March 1964. He also admits that in February 1965 he received a letter from the factory regarding the difficulty plaintiff was having with the softener and that in March he received the letter from plaintiff's attorney.

Plaintiff's claim against defendant is based in the main on Minn. St. 1961, § 512.15(1), which provides:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skills or judgment * * *, there is an implied warranty that the goods shall be reasonably fit for such purpose."

It is plaintiff's claim that he purchased the water softener for use in his residence and that defendant was notified and knew of that purpose. Plaintiff also claims that he relied upon defendant's warranty that the unit would be fit and proper for such use, but that it was unfit in that it failed to reduce the hardness of the water and the iron in it; that the water softener under the circumstances was worthless; and that by reason of the failure of the machine to function and operate as warranted, plaintiff incurred expenses of $50 in an attempt to make it work properly, sustained damage of $100 to his personal property, and incurred interest charges of $30.40 on the purchase of the machine.

Defendant admits making the sale to plaintiff; that the machine used an abnormal amount of salt; and that it would not regenerate automatically. He also admitted that it would not overflow onto the floor if operating normally and that the machine was not operating properly when he was at plaintiff's residence in the fall following the installation and similarly a few days before the trial. He contends that the cause of the difficulty on both occasions was that the dial regulating the amount of salt used in the softening process had been improperly set.

Defendant asserts that the court erred in instructing the jury that plaintiff could recover if defendant was negligent in the installation or servicing of the water-softening unit. From the record it appears quite clear that defendant tried his case in part on the theory that any damages sustained by plaintiff were the result of his own negligence, something not pleaded as a defense in the answer. This led the court to say to the jury:

"* * * [T]here is a claim here on the part of the defendant in this case that any damages sustained by the plaintiff were the result of his

own negligence, and perhaps under the circumstances in this case in view of that fact you should have an instruction in that regard.

"Negligence on the part of any person is the failure on the part of such person to exercise such care as a person of ordinary prudence would have exercised under the same or similar circumstances. The amount of care which a person must exercise necessarily varies with the circumstances in which he is placed. * * *

"* * * To create a liability on the part of one charged with negligence it must appear not only that he was negligent but that such negligence on his part was the proximate cause of the damages resulting therefrom.

"You will be instructed specifically at the end of these instructions further on this matter, and the court does not wish to unduly emphasize this doctrine under the allegations in the pleadings and the claims of the respective parties, but, of course, if there was negligence on the part of the plaintiff and this negligence was a proximate cause of the ensuing damages sustained by him, then, of course, there could be no recovery on his part; * * * but, as will be instructed later, much of this matter is taken care of in the instructions on warranty, and it is only mentioned in explanation."

The court thereafter instructed fully on express and implied warranty, saying in part:

"Where a purchaser expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the purchaser relies on the seller's skill and judgment, there is an implied warranty that the goods shall be reasonably fit for such purposes. The fundamental basis for a seller's liability for breach of warranty arising out of a sales transaction is that the purchaser bought in justifiable reliance upon the seller's assertion and upon his skill and judgment.

"You are instructed that there was a duty on the part of the plaintiff to notify the defendant of any defective condition in the water softener within a reasonable length of time after determination of any defects,

and failure to notify the defendant would relieve the defendant from any further damage.

"What is a reasonable time depends upon the facts of the particular case and is a question for the jury. In other words, a reasonable time under the circumstances of each particular case would be the time that an ordinarily prudent person would require to perform a certain act under such given circumstances."

This was followed by a statement to the following effect:

"Now, of course, there is no warranty as to servicing of the water softener unit, but there could be negligence in servicing, and that will be for your determination."

The reference to negligence in the instructions came into the case because defendant himself injected that issue in charging plaintiff with contributory negligence, and the court simply balanced the matter by explaining the meaning of negligence and its effect should the jury find from the evidence as a whole that there had been negligent conduct on the part of either plaintiff or defendant and his agents.

The liability of the seller to the buyer for negligence was very largely superseded by strict liability for breach of warranty under the Uniform Sales Act. Thus a breach of warranty giving rise to strict liability does not depend upon any knowledge of defects on the part of the seller or any negligence. Prosser, Torts (3 ed.) § 95. It is clear that lack of negligence on the part of a seller will not prevent a buyer from recovering for breach of warranty. This, however, is not to say that a breach of warranty may not arise from negligence.

Defendant asserts that the court erred in informing the jury that breach of implied warranty could arise by faulty installation of the unit. Essentially, the question raised by this contention seems to be whether the installation of the unit was a part of the sale covered by the warranty. In Vold, Sales (2 ed.) § 1, p. 4, the author states:

"In certain types of sales, too, certain services, such as to deliver elsewhere, or to *install,* are many times included." (Italics supplied.)

In the case of Hoye v. Century Builders, 52 Wash. (2d) 830, 833, 329 P. (2d) 474, 476, it was held:

"* * * A contract to construct a new dwelling is one for work, labor and materials. Appellant held itself out as an experienced builder. It furnished the plans for the house. We have no hesitancy in saying, under the circumstances, the trial court was correct in holding that there was an implied warranty that the completed house would be fit for human habitation.

"* * * The uniform current of decisional law in the United States is in accord."

The rule thus seems to be that the warranty applies where the sale involves not only a transfer of a chattel but also some related service, such as construction. We think the rule applies to this case. Plaintiff had never owned a water softener before and he knew nothing about how to install or operate one when he made the purchase from defendant. We think it clear from the record that plaintiff was purchasing an *installed* water softener. In the case of Luther v. Standard Conveyor Co. 252 Minn. 135, 141, 89 N. W. (2d) 179, 184, this court said:

"The law allows a buyer a reasonable time in which to reject an article on the grounds of breach of warranty * * *. In the instant case defendant was entitled to try out a machine which was in good working condition before reaching a decision."

From the statement in the Luther case it may well be reasoned that plaintiff had a right to try the water softener. The jury could properly find a breach of an implied warranty of fitness in view of the difficulty plaintiff experienced in his use of the water softener.

Minn. St. 1961, § 512.49, applicable here, provides:

"* * * [I]f, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

Defendant contends that plaintiff did not give notice of breach of warranty and intent to claim damages within a reasonable time, citing Truesdale v. Friedman, 270 Minn. 109, 132 N. W. (2d) 854, as controlling in his favor on this issue. The Truesdale case holds that the time

when the buyer becomes aware or should have become aware of the claimed defect fixes the time from which the delay commences and from which the reasonableness or unreasonableness of the delay must be determined. We held in that case that a delay in notification from 12 to 23 months would be unreasonable as a matter of law when the buyer is aware, or should be aware, of the defect. There was no such delay in notification in the instant case. It first came within 2 weeks after the purchase had been made and was continuous thereafter running over a period of a year during which plaintiff cooperated with defendant in trying to remedy the defects before finally, at the end of that time, notifying defendant that unless the water softener could be placed in working order as warranted, he should install a properly functioning softener or return to plaintiff the purchase price. There is no merit in defendant's claim that notice was not given within a reasonable time, and the requirement of the statute with respect to notice was sufficiently complied with.

In Inland Products Corp. v. Donovan Inc. 240 Minn. 365, 374, 62 N. W. (2d) 211, 219, this court held:

"* * * A review of the findings, memorandum, and evidence indicates that once the defects became known to the plaintiff it promptly notified the defendant. There is abundant evidence that any delay between that time and the time that this action was instituted was due to the indulgence and cooperation by the plaintiff in the defendant's attempts to remedy its defaults. This period should not be charged to the buyer as delay in notifying the seller of the defects."

The same is true here.

In Beck v. Spindler, 256 Minn. 543, 558, 99 N. W. (2d) 670, 680, this court, after referring to Minn. St. 1961, § 512.15(1), stated:

"An implied warranty is imposed by law for the protection of the buyer and does not depend upon the affirmative intention of the parties. In Bekkevold v. Potts, 173 Minn. 87, 89, 216 N. W. 790, 791, 59 A. L. R. 1164, 1166, we said:

" 'An implied warranty is not one of the contractual elements of an agreement. It is not one of the essential elements to be stated in the

contract nor does its application or effective existence rest or depend upon the affirmative intention of the parties. It is a child of the law. Because of the acts of the parties, it is imposed by the law. It arises independently and outside of the contract. The law annexes it to the contract. It writes it, by implication, into the contract which the parties have made. Its origin and use are to promote high standards in business and to discourage sharp dealings. It rests upon the principle that "honesty is the best policy," and it contemplates business transactions in which both parties may profit. * * * The doctrine of implied warranty should be extended rather than restricted.'

"The doctrine of implied warranty is favored by this court, and such warranties should be given effect when it is possible to do so.

"In Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 403, 234 N. W. 685, 687, we said:

" 'The doctrine of implied warranty is to be liberally construed. * * * The rule is an equitable one.' "

Defendant also contends that the court erred in instructing the jury on the measure of damages. The court said:

"The measure of damages * * * would be the value of the machine as it was supposed to be at the inception and the value of the machine as it presently exists; and you heard the testimony in regard to the other damages, so you will have to find accordingly as a jury. I can't tell you how to find."

A search of the record reveals no evidence that plaintiff at any time returned the water-softening unit. Thus it would appear that his claim comes under Minn. St. 1961, § 512.69(1)(b), which reads as follows:

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election:

* * * * *

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty."

What constitutes damages is set out in Minn. St. 1961, § 512.69(6) in the following words:

"The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."

In Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 444, 40 N. W. (2d) 73, 79, this court held:

"* * * The damages recoverable for breach of warranty are: (1) Such as arise naturally in the usual course of things from the breach itself; or (2) such as accrue as a consequence of the breach as the parties contemplated when making the contract." (Italics omitted.)

While the court's instruction on the measure of damages might have gone more fully into detail, we nevertheless think it sufficient upon the record herein and in light of the amount of the verdict.

We reach the conclusion that the instructions, when read as a whole and construed together, contain no prejudicial error. Shastid v. Shue, 247 Minn. 314, 77 N. W. (2d) 273; Nathan v. St. Paul Mutual Ins. Co. 251 Minn. 74, 87, 86 N. W. (2d) 503, 513. At the end of the instructions defendant made no objection to the instruction on damages.

We have fully considered all the assignments of error and are convinced that there was no prejudicial error. The evidence amply sustains the jury's verdict.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.