**VALLEY FARMERS' ELEVATOR, Appellant,**

v.

**LINDSAY BROTHERS COMPANY, Respondent,**

v.

**MARTIN STEEL CORPORATION, Respondent.**

**Nos. C6–85–1639, C0–85–2057.**

Court of Appeals of Minnesota.

Feb. 4, 1986.
Review Granted April 11, 1986.

Robert M. Halvorson, William A. Moeller, Gislason, Dosland, Hunter & Malecki, New Ulm, for appellant.

Garrett E. Mulrooney, Timothy P. Daniels, Maun, Green, Hayes, Simon, Johanneson & Brehl, St. Paul, for Lindsay Bros. Co.

Eric J. Magnuson, Keith J. Kerfeld, Rider, Bennett, Egan & Arundel, Minneapolis, for Martin Steel Corp.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LANSING, Judge.

Valley Farmers' Elevator brought a negligence and products liability action against Lindsay Brothers Co. arising out of Lindsay Brothers' design, sale and installation of a grain storage system. The trial court entered summary judgment in favor of Lindsay Brothers, and Valley Farmers' appeals. We affirm.

## FACTS

In early 1977, Wegdahl Elevator, Valley Farmers' predecessor in interest, contacted Lindsay Brothers and requested a bid or proposal for a grain storage system. Valley Farmers' claims the proposal required Lindsay Brothers to "design the system, choose the component parts and provide the labor to build the system." Lindsay Brothers submitted a proposal for a storage system with a total price, including costs of installation, of $504,000. The proposal was accepted, and the system was installed in late 1977.

On December 4, 1981, Valley Farmers' employees used the aeration component of the system to cool the grain. The employees started the suction air flow system and left for the weekend with the system still running. When the employees left, the weather was clear and cool. During the night, however, the humidity in the air increased. As a result, water collected around the system's intake vents and froze them shut. The pump continued to draw air out of the bin, and because there was no incoming air, a vacuum was created. The bin ultimately collapsed inward.

Valley Farmers' commenced this action against Lindsay Brothers on theories of negligent design of the grain bin system, negligent failure to warn, and products liability. Specifically, Valley Farmers' asserts that Lindsay Brothers negligently failed to install inexpensive automatic aeration safety controls, which were recommended in the owner's manual for the bin.

Valley Farmers' seeks damages that are solely economic: the cost of repairing the bin, transferring the grain, and lost profits during the time of repair.

Lindsay Brothers impleaded Martin Steel Corp., the manufacturer of the grain bin, seeking indemnity and contribution. On August 7, 1985, the trial court granted Lindsay Brothers' motion for summary judgment on the ground that Valley Farmers' was seeking economic losses arising out of a commercial transaction under a negligence theory. Judgment was entered on August 8, 1985.

Valley Farmers' initial notice of appeal stated that it was appealing from "an order of the [trial] court filed on date shown granting * * * Lindsay Brothers Company's motion for summary judgment." In the upper right-hand corner of the notice of appeal appears the phrase, "Date of Judgment: August 8, 1985."

Lindsay Brothers argued in its brief to this court that Valley Farmers' was appealing from a nonappealable order. In response, Valley Farmers filed a second notice of appeal, No. C0–85–2057, stating the appeal was from the judgment entered August 8, 1985. The appeals were consolidated by order of this court.

## ISSUES

1. Is the initial notice of appeal sufficient?

2. Are purely economic damages recoverable in an action for negligent performance of services in a mixed "goods and services" commercial transaction?

## ANALYSIS

### I

Notices of appeal are to be liberally construed in favor of their sufficiency. *Kelly v. Kelly*, 371 N.W.2d 193, 195 (Minn.1985). In its initial notice of appeal Valley Farmers' incorrectly stated that it was appealing from "an order * * * granting * * * summary judgment."[1] However, the notice incorporates the judgment entered on August 8, 1985. We do not think that Valley Farmers' mischaracterization of its appeal as being from an order granting summary judgment misled Lindsay Brothers. *See Kelly*, 371 N.W.2d at 196. We hold that appellant's initial notice of appeal is sufficient.

---

1. An order for summary judgment is not appealable. *Nelson v. Safety, Inc.*, 361 N.W.2d 470, 471 (Minn.Ct.App.1985).

## II

■ Economic losses arising out of commercial transactions, except those involving personal injury or damage to other property, are not recoverable under the tort theories of negligence or strict products liability. *Superwood Corp. v. Siempelkamp Corp.*, 311 N.W.2d 159, 162 (Minn.1981). This rule also extends to economic losses resulting from a "sudden and calamitous" occurrence or accident. *S.J. Groves and Sons Co. v. Aerospatiale Helicopter Corp.*, 374 N.W.2d 431, 435 (Minn.1985); *Tri-State Insurance Co. v. Lindsay Brothers Co.*, 364 N.W.2d 894 (Minn.Ct.App.1984) (fire broke out in faulty grain dryer), *aff'd mem.*, (Minn. Jan. 23, 1986).

The basis for restricting recovery in negligence or strict products liability is clearly set forth in *S.J. Groves and Sons:*

> The rationale and public policy objectives underlying this general rule arise, as we recognized in *Superwood,* out of a basic principle: tort law and the Uniform Commercial Code serve distinct purposes, and neither will be permitted to pre-empt the other. The U.C.C. was enacted to govern and clarify the rights and remedies of parties to commercial transactions. As part of its risk allocation scheme, it permits parties to limit and modify by contract the remedies available for commercial losses. Minn.Stat. § 336.2–719 (1984). Thus, to allow unlimited tort liability in all commercial transactions regardless of contractual limitation "would totally emasculate these provisions of the U.C.C.," circumventing legislative intent. *Id.* at 162. On the other hand, strict liability in tort "developed in large part to fill gaps in the law of sales with respect to consumer purchasers," *id.*, gaps that exist because of contractual requirements of privity and notice, and, more importantly, because individual consumers lack the bargaining power to avoid accepting contracts that unfairly limit their remedies. Our general rule as expressed in *Superwood* arose out of our conclusion that "[l]imiting the application of strict products liability to consumers' actions or

actions involving personal injury will allow the U.C.C. to satisfy the needs of the commercial sector and still protect the legitimate expectations of consumers." *Id.*

*Id.* at 433.

*Superwood, S.J. Groves and Sons* and *Tri-State Insurance* involved claims arising from the sale of goods. No services were included in the commercial transactions. Valley Farmers argues that because its claim is based on negligent performance of promised services, rather than a defective product, *Superwood* and its progeny do not apply.

■ Minnesota has long allowed negligence actions for the recovery of economic losses resulting from the negligent performance of professional services. *See City of Eveleth v. Ruble*, 302 Minn. 249, 225 N.W.2d 521 (1974); *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 211 N.W.2d 159 (1973). The holding of *Superwood* does not address professional services because the questions certified to the court in *Superwood* were premised on the manufacture of a defective product.

At least one other *Superwood* jurisdiction has addressed the recovery of economic losses in professional malpractice actions. Illinois, which adopted the *Superwood* rule in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 81, 61 Ill.Dec. 746, 751, 435 N.E.2d 443, 448 (1982), subsequently held that economic loss caused by an architect's negligent performance of his professional duties is recoverable in a tort action. *Rosos Litho Supply Corp. v. Hansen*, 123 Ill.App.3d 290, 297–98, 78 Ill.Dec. 447, 453–54, 462 N.E.2d 566, 572–73 (1984). An earlier decision from a separate appellate division, *Palatine National Bank v. Greengard Associates, Inc.*, 119 Ill.App.3d 376, 379–80, 74 Ill.Dec. 914, 917–18, 456 N.E.2d 635, 638 (1983), upheld the dismissal of professional engineering negligence counts seeking damages for economic losses but did not distinguish between professional services

and defective products. We find the analysis in *Rosos Litho* more thorough and consequently more persuasive.

In allowing the action for economic loss, the *Rosos Litho* court reasoned that since the U.C.C. is inapplicable to the provision of professional services, a plaintiff injured as a result of professional services would have no warranty remedy for economic loss. Therefore, "[t]he U.C.C. policy of protecting consumers by means of implied warranties would not be promoted by depriving [plaintiff] of a viable cause of action for economic loss." 123 Ill.App.3d at 296, 78 Ill.Dec. at 453, 462 N.E.2d at 572.

The reasons stated for the origin and application of the *Superwood* rule in Minnesota proceed from the same policy: protection of the certainty and uniformity of the rights and remedies provided by the U.C.C. *Superwood*, 311 N.W.2d at 162; *S.J. Groves and Sons*, 374 N.W.2d at 433. Professional services in the context of commercial transactions are implicated only in the general language of *Superwood*. If the court had intended to abolish professional malpractice actions for economic losses, we believe it would have done so explicitly and not by mere inference. We decline to interpret *Superwood* to create that prohibition. When the reasons for the restriction on the cause of action cease to apply, the rule should not be extended.

Lindsay Brothers does not acknowledge that any professional services were included in its transaction with Valley Farmers'. It asserts instead that it sold a commercial grain bin, designed and manufactured by Martin Steel Corp., and a drying mechanism, designed and manufactured by Sukup Co. Lindsay Brothers acknowledges that it coordinated the products and arranged for the labor to erect and install the equipment. Valley Farmers' claims that

Lindsay Brothers also sold "design services" which integrated the components of the grain bin system and that those services were negligently performed. Valley Farmers' does not allege that it dealt with an engineer or architect but a "retailer who provided a service to integrate the grain bin into a storage system."

■ Taking the facts, as we must, in the light most favorable to Valley Farmers' requires us to further analyze the *Superwood* rule as it applies to commercial transactions involving the mixed sale of goods and services where the services are provided by individuals not conventionally recognized as "professionals." *See City of Mounds View v. Walijarvi*, 263 N.W.2d 420 (Minn.1978).

In creating a dividing line between those causes ·of action allowing economic damages and those that do not, we are similarly guided by the principles set down in *Superwood:* to prevent the overlapping and undermining of the provisions of the U.C.C. We must therefore determine if this transaction was governed by the U.C.C. and if a remedy was provided to Valley Farmers' under the Code.[2]

In *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir.1974), the Eighth Circuit advanced a test for deciding whether contracts that combine goods and services are governed by Article 2 of the U.C.C.:

The test for inclusion or exclusion is not whether [the contracts] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.*, contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.*, installation of a water heater in a bathroom).

---

**2.** The Illinois Supreme Court has extended the *Superwood* rule to construction contractors who render defective construction services. *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.*, 96 Ill.2d 150, 70 Ill.Dec. 251, 449 N.E.2d 125 (1983). While we recognize the similarity of construction services to the services rendered in the transaction before us, the court

in *Foxcroft* based its extension of the *Superwood* doctrine upon a mechanical application of the rule. *See Foxcroft*, 96 Ill.2d at 156–57, 70 Ill. Dec. 254, 449 N.E.2d at 128. We prefer to examine whether the policy behind the *Superwood* rule would be furthered in extending it to a particular commercial transaction.

499 F.2d at 960 (footnotes omitted). *See also Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456, 460 (4th Cir.1983) (indicia of the nature of the contract include: the language of the contract, the nature of the business of the supplier, and the intrinsic worth of the materials involved); *Ranger Construction Co. v. Dixie Floor Co., Inc.*, 433 F.Supp. 442 (D.S. C.1977) (whether or not transaction governed by U.C.C. is a question of law).

The agreement between Valley Farmers' and Lindsay Brothers is denominated a "proposal." Valley Farmers' is referred to as the "buyer" and the "purchaser." The equipment sold by Lindsay Brothers accounted for approximately 75 percent of the total contract price. Minnesota sales tax was charged on the storage tanks, and the proposal indicates that the total price quotation did not include sales tax, indicating that such tax was envisioned. There is little evidence of the nature of Lindsay Brothers' business, but the proposal describes Lindsay as a wholesale distributor of agricultural equipment and industrial supplies. Faced with this evidence, we conclude as a matter of law that the agreement between the parties predominantly involved the sale of goods and is therefore exclusively governed by the U.C.C.

This conclusion is supported by the supreme court's recognition that faulty services rendered in conjunction with the sale of goods are covered by the implied warranties of the U.C.C. *O'Laughlin v. Minnesota Natural Gas Co.*, 253 N.W.2d 826, 830–31 (Minn.1977) (citing *Kopet v. Klein*, 275 Minn. 525, 529, 148 N.W.2d 385, 389 (1967)).

We conclude that the commercial transaction between Valley Farmers' and Lindsay Brothers was governed by the U.C.C. and that the warranty remedies of the U.C.C. were available to Valley Farmers'. To allow Valley Farmers' to recast its claim under a negligence theory and thus evade the limitations provision of the U.C.C. would undermine the U.C.C. in the manner that *Superwood* was intended to prevent.

## DECISION

The initial notice of appeal sufficiently apprised the respondents of the judgment being appealed. The agreement between the parties was governed by the U.C.C., and therefore Valley Farmers' may not seek recovery of solely economic losses under a negligence theory.

Affirmed.